# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

## No. ACM S32579

———————————

**UNITED STATES**
*Appellee*

**v.**

**John T. BARRICK**
Airman First Class (E-3), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 30 September 2020

———————————

*Military Judge:* Steven J. Grocki.

*Sentence:* Sentence adjudged 26 February 2019 by SpCM convened at Nellis Air Force Base, Nevada. Sentence entered by military judge on 19 March 2019: Bad-conduct discharge, confinement for 45 days, forfeiture of $1,120.00 pay per month for 2 months, and reduction to E-1.

*For Appellant:* Lieutenant Colonel R. Davis Younts, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Jessica L. Delaney, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and MEGINLEY, *Appellate Military Judges*.

Judge RICHARDSON delivered the opinion of the court, in which Judge MEGINLEY joined. Senior Judge POSCH filed a separate opinion concurring in the result.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

RICHARDSON, Judge:

A special court-martial composed of a military judge alone convicted Appellant, in accordance with his pleas pursuant to a pretrial agreement (PTA), of one specification of going from his appointed place of duty, in violation of Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886; one specification of making a false official statement, in violation of Article 107, UCMJ, 10 U.S.C. § 907; and one specification each of wrongfully using psilocybin mushrooms, cocaine, marijuana, and 3,4-methylenedioxymethamphetamine, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a.[1,2] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 45 days, forfeiture of $1,120.00 pay per month for two months, and reduction to the grade of E-1. The PTA did not impact the convening authority's ability to effectuate the sentence as adjudged; he provided no relief at action with respect to the findings or sentence.

Appellant raises three assignments of error relating to the post-trial processing in his case. We consider whether (1) issuance of a corrected copy of the Statement of Trial Results (STR) invalidates the entry of judgment (EoJ), (2) failure to identify the command of the convening authority in the STR invalidates the EoJ, and (3) a missing appellate exhibit from the record of trial entitles Appellant to sentence appropriateness relief. We also consider the convening authority's action with respect to the sentence. We find no error materially prejudicial to a substantial right of Appellant and affirm the findings and sentence.

## I. BACKGROUND

The offenses for which Appellant was found guilty and sentenced occurred between on or about 1 May 2018 and on or about 9 November 2018. The convening authority referred the charges and specifications for trial by special court-martial on 15 January 2019. Accordingly, Appellant's court-martial was generally subject to the substantive provisions of the UCMJ and sentencing procedures in effect before 1 January 2019, and procedural provisions of the Rules for Courts-Martial (R.C.M.) in the 2019 version of the *Manual for Courts-Martial*, including rules for post-trial processing. *See also* Exec. Order 13,825, 83 Fed. Reg. 9889, 9890 (8 Mar. 2018).

---

[1] Unless otherwise noted, references to the punitive articles of the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*). Unless otherwise noted, all other references to the UCMJ and to the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] The uses of cocaine and marijuana were on divers occasions.

## II. DISCUSSION

### A. Decision on Action

Appellant notes in his assignment of error brief, "Here the convening authority took no action and it is reasonable to consider the convening authority's decision not to act as the equivalent of action." We agree. The convening authority's decision met the requirements of Article 60, UCMJ, 10 U.S.C. § 860 (2016 *MCM*) inasmuch as it required "action" in this case. We find this decision also complied with the provisions of R.C.M. 1109, requiring convening authority action only when affecting the sentence. In coming to these conclusions, we note Air Force Instruction 51-201, *Administration of Military Justice*, Section 13D (18 Jan. 2019), correctly advises convening authorities to grant relief as circumscribed by the applicable version of Article 60, UCMJ. Additionally, it advises convening authorities to specify "no action" if not granting relief, which would include effecting "action" under the applicable version of Article 60, UCMJ.

In the record, we see no indicia of confusion over, or objection to, this new way to effect an old rule. The convening authority's decision to "take no action" on the findings or sentence is memorialized in his memorandum to the military judge. The military judge's subsequent EoJ reflects "all post-trial actions by the convening authority," including the de facto approval of the sentence. Neither party moved for correction of the decision on action or EoJ. *See* R.C.M. 1104(b)(2)(B), (C). The convening authority's action to provide no relief was "clear and unambiguous." *See United States v. Politte*, 63 M.J. 24, 25–26 (C.A.A.F. 2006). We disagree with our esteemed colleagues' opinion in *United States v. Finco*, 2020 CCA LEXIS 246, at \*15 (A.F. Ct. Crim. App. 2020), which, under similar facts, found error where the convening authority *did* "take no action on the sentence," and found such error to be plain and obvious. We find neither error nor cause to return the case to the military judge to resolve "[a]n allegation of error in the convening authority's action." R.C.M. 1104(b)(1)(F).

### B. Statement of Trial Results

#### 1. Additional Background

The same day Appellant's trial concluded on 26 February 2019, the military judge signed an STR in accordance with R.C.M. 1101(a). The STR was provided to Appellant, his defense counsel, and the convening authority during post-trial processing. The Defense submitted clemency matters to the convening authority on 5 March 2019. The court reporter certified the record of trial on 11 March 2019. The convening authority issued his decision on action on 13 March 2019. The military judge signed a corrected copy of the STR, dated 18 March 2019, adding to the summary under "Arraigned Offenses" of the Specification of Charge II: "and was then known by the said AIRMAN FIRST

CLASS JOHN T. BARRICK to be so false."[3] On the same day, the court reporter certified a verbatim transcript of the proceedings. On 19 March 2019, the military judge signed the EoJ.[4] He attached to it the original STR, the convening authority's decision on action, and the corrected STR. Neither the original STR nor the corrected STR identifies the convening authority. The record was docketed with this court on 1 April 2019.

**2. Law**

Rule for Courts-Martial 1101(a) lists required contents of an STR, including "the command by which [the court-martial] was convened" and "[a]ny additional information . . . required under regulations prescribed by the Secretary concerned." R.C.M. 1101(a)(3), (6).

The EoJ—the judgment of the court-martial entered into the record of trial—shall include, *inter alia*, the STR. R.C.M. 1111(b)(4). "The judgment of the court entered under this rule should provide a complete statement of the findings and the sentence reflecting the effect of any post-trial modifications." *Id.*, Discussion.

**3. Analysis**

The STR in this case included most of the required contents, and it indicated the squadron and major command to which Appellant was assigned, but it omitted the command that convened the court-martial. *See United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at *2–3 (A.F. Ct. Crim. App. 16 Dec. 2019) (per curiam) (unpub. op.). We disagree with Appellant that this omission renders the EoJ invalid. We find no colorable showing of possible prejudice from this minor omission, *see United States v. Scalo*, 60 M.J. 435, 436–37 (C.A.A.F. 2005) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)), and find it unnecessary to direct corrective action as we are authorized to do by R.C.M. 1112(d)(2).

Appellant argues that the original STR in this case formed the basis for the EoJ, which rendered the EoJ defective and invalid. This argument has no basis in fact. The STR was corrected on 18 March 2019, one day *before* the EoJ was signed. The EoJ includes as attachments both the original and corrected STR.

Related to this argument, Appellant avers simply, "Further, the Appellant and his counsel were not provided a new opportunity to submit matters after the issuance of a 'corrected copy' of the STR in this case." Appellant cites no

---

[3] These words were in the charged specification. Although the Government concedes error in the original STR, we need not decide that issue to complete our review.

[4] While the first page of the EoJ indicates the date "15 March 2019," on the second page the military judge specifically states he signed the EoJ on 19 March 2019.

basis in law for error and articulates no prejudice. Ourselves finding none, we decline to grant relief. Appellant also urges us to provide relief for an incorrect Defense Incident-Based Reporting System code on the EoJ. Like our sister court, we find no basis in law to provide relief for this alleged administrative error. *See United States v. Baratta,* 77 M.J. 691, 695 (N.M. Ct. Crim. App. 2018).

## C. Missing Appellate Exhibit

### 1. Additional Background

The military judge ascertained trial defense counsel provided Appellant his post-trial and appellate rights orally and in writing, "including the rights contained in Rule for Courts-Martial 1010."[5] Appellant and trial defense counsel affirmed their signatures were on the document. The military judge ensured Appellant understood his rights and had no questions. He directed the written rights advisement be marked Appellate Exhibit V; trial defense counsel complied, handing the ten-page original document to the court reporter and a working copy to the military judge. The record of trial does not contain this written advisement of post-trial and appellate rights.

### 2. Law

Whether a record of trial is complete is a question of law we review de novo. *United States v. Davenport*, 73 M.J. 373, 376 (C.A.A.F. 2014) (citation omitted). Article 54(c)(2), UCMJ, 10 U.S.C. § 854(c)(2), requires a "complete record of the proceedings and testimony" to be prepared for any court-martial resulting in a punitive discharge. The implementing rule states the record of trial shall include, *inter alia*, any appellate exhibits. R.C.M. 1112(b)(6).

"[T]he threshold question is 'whether the omitted material was substantial,' either qualitatively or quantitatively." *Davenport*, 73 M.J. at 377 (quoting *United States v. Lashley*, 14 M.J. 7, 9 (C.M.A. 1982)) (additional citation omitted). Each case is analyzed individually to decide whether an omission is substantial. *United States v. Abrams*, 50 M.J. 361, 363 (C.A.A.F. 1999). "A substantial omission renders a record of trial incomplete and raises a presumption of prejudice that the Government must rebut." *United States v. Henry*, 53 M.J. 108, 111 (C.A.A.F. 2000) (citing *United States v. McCullah*, 11 M.J. 234, 237 (C.M.A. 1981)) (additional citations omitted). "Insubstantial omissions from a record of trial do not raise a presumption of prejudice or affect that record's characterization as a complete one." *Id*. A record may be "substantially complete" even if an exhibit is missing. *See, e.g.*, *United States v. Lovely*, 73 M.J.

---

[5] "The written advice to the accused concerning post-trial and appellate rights shall be signed by the accused and defense counsel and inserted in the record of trial as an appellate exhibit." R.C.M. 1010.

658, 676 (A.F. Ct. Crim. App. 2014) (missing videos played by defense in sentencing proceedings did not render record incomplete).

### 3. Analysis

The omission of Appellate Exhibit V from the record of trial in this case is insubstantial. Thus, we conclude the record is substantially complete. Article 54(c)(2), UCMJ. Furthermore, Appellant has not articulated prejudice from the omission, and we find none. In light of our determination that the record is complete, we are not persuaded by Appellant's novel argument that the action-to-docketing deadline requires that we grant prospective relief under *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006), premised as it is on the supposition that the record is not "complete" as a matter of law until the missing appellate exhibit is included.

## III. CONCLUSION

The findings and sentence entered are correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

POSCH, Senior Judge (concurring in the result):

I agree with my esteemed colleagues in their resolution of Appellant's assignments of error in regard to the issues Appellant raises about the post-trial processing of his case. The convening authority granted no relief to Appellant when he signed his decision memorandum on 13 March 2019, taking no action on the adjudged sentence. Still, Appellant intimates in his brief to this court that the convening authority may have erred when he stated in his decision memorandum, "I take no action on the sentence in this case." Implicit to Appellant's concern is that the convening authority may have been required by Article 60, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 860, as it appears in the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM)*, to "approve" the sentence, and that failure to take action to approve his sentence was error. Even so, Appellant in some measure concedes that "it is reasonable to consider the convening authority's decision not to act as the equivalent of action" when a convening authority determines sentencing relief is not warranted.

I write separately for two reasons. First, to explain that the convening authority's decision to take "no action" on Appellant's adjudged sentence fully

complied with the Military Justice Act of 2016 (MJA),[1] as implemented by the President effective on 1 January 2019 in Exec. Order 13,825, §§ 3(a), 5, and 6(b), 83 Fed. Reg. 9889, 9890 (8 Mar. 2018). Second, and related, I make clear a difference of opinion with a recent decision by this court, *United States v. Finco*, No. ACM S32603, 2020 CCA LEXIS 246 (A.F. Ct. Crim. App. 27 Jul. 2020) (unpub. op.), that reached the opposite conclusion in a case similar to Appellant's.

Resolution that the convening authority's decision was correct in law turns on understanding several provisions of the President's implementation of Article 60, UCMJ, 10 U.S.C. § 860, in the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*), above all, Exec. Order 13,825, §§ 5 and 6(b), 83 Fed. Reg. at 9890. Because the convening authority's decision memorandum was altogether in accordance with the President's implementation and the law, the convening authority did not err by taking "no action" on the sentence that was adjudged in Appellant's case.

## A. Amendment to Article 60, UCMJ, in the MJA

Appellant was convicted of offenses he committed after 24 June 2014, which is the effective date of Article 60, UCMJ, in the 2016 *MCM*.[2] In courts-martial for offenses occurring on and after this date, and before implementation of the MJA, a convening authority was required to take action to effectuate the sentence in every case.[3] *See* Article 60(c)(2)(A), 10 U.S.C. § 860(c)(2)(A) (2016 *MCM*) ("Action on the sentence of a court-martial shall be taken by the convening authority . . . .").

---

[1] *See* National Defense Authorization Act for Fiscal Year 2017 (FY17 NDAA), Pub. L. No. 114-328, §§ 5001–5542 (23 Dec. 2016).

[2] *See* National Defense Authorization Act for Fiscal Year 2014 (FY14 NDAA), Pub. L. No. 113-66, § 1702, 127 Stat. 672, 958 (26 Dec. 2013) (establishing 24 June 2014 as the effective date for Article 60, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 860, as it appears in the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*)).

[3] Before the effective date of the Military Justice Act of 2016 (MJA), a convening authority was required to either approve the sentence of the court-martial, or, subject to limits on that authority as provided by law, disapprove, commute, or suspend the sentence, in whole or in part. *See, e.g.*, Article 60(c)(2) and (c)(4), UCMJ, 10 U.S.C. § 860(c)(2), (c)(4) (2016 *MCM*). Importantly, and as later discussed in this opinion, a convening authority has the statutory authority pursuant to Article 60 in the 2016 *MCM* to take action pursuant to the terms of a pre-trial agreement with an accused. *See, e.g.*, Article 60(c)(4)(C), UCMJ, 10 U.S.C. § 860(c)(4)(C) (2016 *MCM*). No similar power conferred on a convening authority is found in the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*).

The MJA changed this requirement when Congress amended Article 60, UCMJ, as it appears in the 2019 *MCM*[4] to require "action" on the sentence if and only if a convening authority intends to grant relief by reducing, commuting, suspending, or in some cases, by disapproving a sentence, in whole or in part, as allowed for by law.[5] In accordance with the amended Article 60 in the 2019 *MCM*, a convening authority's formal refusal to act, that is, declination to act by taking "no action" on the sentence, effectuates the adjudged sentence in the same way that a convening authority once approved the sentence without modification under the former Article 60 (2016 *MCM*). This change is perhaps most clearly stated in Article 60a(f)(2), UCMJ, in the 2019 *MCM* by the conditional language: "*If*, under this section, the convening authority reduces, commutes, or suspends the sentence, the decision of the convening authority shall include a written explanation of the reasons for such action."[6] 10 U.S.C. § 860a(f)(2) (emphasis added). After the convening authority's decision, the judgment of the court-martial consists of the adjudged sentence listed in the Statement of Trial Results as modified by "*any* post-trial action by the convening authority." Article 60c(a)(1)(B)(i), 10 U.S.C. § 860c(a)(1)(B)(i) (2019 *MCM*) (emphasis added).

For many years, military justice practitioners have been accustomed to thinking of "action" as effectuating the sentence—whether by granting relief *or not*—as this term appears in editions of the *Manual for Courts-Martial* before the 2019 *MCM*. This legacy and more comprehensive definition gave way to a more specific meaning in the MJA and the President's implementation of the Act. Although undefined, usage of the term "action" in the 2019 *MCM* reveals it to mean "granting relief" in each and every case that a convening authority decides to take action on the sentence in a particular case. Conversely, in accordance with Article 60 in the 2019 *MCM*, a convening authority's "no

---

[4] The amendment to Article 60, UCMJ, was among the many changes to the UCMJ that Congress directed in the MJA that were subsequently expanded to four articles and codified in the 2019 *MCM*. Unless otherwise noted in this opinion, all references to the convening authority's powers and responsibilities in Article 60, UCMJ, in the 2019 *MCM* are to Articles 60, 60a, 60b, and 60c, UCMJ, 10 U.S.C. §§ 860, 860a, 860b, 860c, collectively.

[5] *See* Articles 60a and 60b, UCMJ, 10 U.S.C. §§ 860a, 860b (2019 *MCM*). In certain cases the convening authority may also act to "disapprove" a sentence in whole or in part. *See* Article 60b(a)(1)(C)–(F), UCMJ, 10 U.S.C. § 860b(a)(1)(C)–(F) (2019 *MCM*).

[6] *See also* Article 60a(a)(1)(A), UCMJ, 10 U.S.C. § 860a(a)(1)(A) (2019 *MCM*) (subject to limitations, a convening authority "*may* act on the sentence of the court-martial" (emphasis added)).

action" decision on the sentence results in an entry of judgment (EoJ) that reflects the sentence adjudged by the court-martial without modification, as it did here.

In Appellant's case, the language of the convening authority decision to take "no action" on the adjudged sentence is synonymous with not granting relief. By deciding to take no action the convening authority followed the post-trial procedures that Congress directed in the MJA, notably Article 60 in the 2019 *MCM*, and not the legacy procedures in Article 60 in the 2016 *MCM*. As a result, the question of whether the convening authority's decision memorandum contains error turns on the post-trial procedures that Congress and the President intended the convening authority to follow. Answering this question requires review of the convening authority's decision in light of the President's implementation of the MJA. If taking "no action" complied with the implementation of the Act, as I conclude that it did, then there is no error to evaluate for harmlessness or to correct on appeal or by remand to the military judge.

**B. Implementation of the MJA: Executive Order 13,825**

In the MJA, Congress assigned to the President considerable discretion to set the effective date of the amendments to the UCMJ and to prescribe the regulations implementing those amendments.[7] However, that discretion was bounded by a date by which implementation must be completed. With few limitations, Congress directed that the implementation "shall take effect" no later than 1 January 2019.[8] The President then exercised this authority by issuing Executive Order 13,825 and new Rules for Courts-Martial (R.C.M.) that are listed in Annex 2 of the Executive Order and that were subsequently promulgated in Part II of the 2019 *MCM*. In accordance with the direction given by Congress to the President, Exec. Order 13,825, § 5, effected these rules for

---

[7] *See* FY17 NDAA, Pub. L. No. 114-328, § 5542; *see also* Article 36(a), UCMJ, 10 U.S.C. § 836(a), in the 2016 and 2019 *MCMs* (President may prescribe regulations for post-trial procedures); *United States v. Bartlett*, 66 M.J. 426, 428 (C.A.A.F. 2008) (the authority to prescribe regulations prevails "insofar as such regulations are not inconsistent with the UCMJ").

[8] The FY17 NDAA, including the MJA that was codified in Division E of the NDAA, was enacted on 23 December 2016. "Except as otherwise provided in this division, the amendments made by this division shall take effect on the date designated by the President, which date shall be not later than the first day of the first calendar month that begins two years after the date of the enactment of this Act." *See* FY17 NDAA, Pub. L. No. 114-328, § 5542(a).

cases referred to trial by court-martial on and after 1 January 2019.[9] The new rules implement the amendments made by Congress in Article 60 in the 2019 *MCM*, as discussed, and include considerable revisions in the manner by which the convening authority effectuates an appellant's sentence after one has been adjudged.

Among the rules that took effect on 1 January 2019 for cases referred on and after that date are R.C.M. 1109 and 1110 that guide a convening authority's decision whether to take action on an adjudged sentence.[10] Following the new procedures in those rules, which implement and track the amendments that Congress made to Article 60 as promulgated in the 2019 *MCM*, no action is required unless a convening authority intends to reduce, commute, or suspend, or in some cases, disapprove, a sentence, in whole or in part. R.C.M. 1109(c)(5)(A), (g)(2); R.C.M. 1110(c), (e). Under these rules, a "convening authority is no longer required to take action on the results of every court-martial." *United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at *3 (A.F. Ct. Crim. App. 16 Dec. 2019) (unpub. op.) (citing R.C.M. 1109 and 1110 (2019 *MCM*)). Instead, a convening authority may decline to take action after consulting with the staff judge advocate and considering any clemency matters timely submitted by an accused. R.C.M. 1109(c), (d), (g); R.C.M. 1110(c)(1) ("action on the sentence is not required"); *see also Moody-Neukom*, unpub. op. at *3.

## C. Application of the MJA, as Implemented, to Appellant's Case

One turns then to consider the effect of the President's implementation of the MJA in Executive Order 13,825 on the post-trial procedures that are applicable to Appellant's case. Here, the charges and specifications were referred to trial by special court-martial on 15 January 2019. Thus, the convening authority was required to follow the procedural provisions in the 2019 *MCM* that went into effect on 1 January 2019, notably R.C.M. 1109 and 1110 that are germane to a convening authority's power and responsibility in post-trial processing. In

---

[9] *See* Exec. Order 13,825, § 5, 83 Fed. Reg. 9889, 9890 (8 Mar. 2018) (codifying in the 2019 *MCM* new Rules for Courts-Martial (R.C.M.) among the amendments in Annex 2, that "shall take effect on January 1, 2019," subject to exceptions that are not applicable here); *see also* FY17 NDAA, Pub. L. No. 114-328, § 5542(c)(2) (stating MJA amendments to the UCMJ "shall not apply to any case in which charges are referred to trial by court-martial before the effective date of such amendments").

[10] *See* Exec. Order 13,825, § 5, 83 Fed. Reg. at 10040–43 (implementing R.C.M. 1109, *Reduction of sentence, general and special courts-martial*); 10043–44 (implementing R.C.M. 1110, *Action by convening authority in certain general and special courts-martial*).

accordance with these rules, unless the convening authority had determined to grant relief,[11] the convening authority was under no obligation to act on the sentence after Appellant was tried and sentenced on 26 February 2019.

In compliance with R.C.M. 1109 and 1110, the convening authority took no action on the adjudged sentence when he signed the decision memorandum on 13 March 2019, thereby indicating a formal determination that sentencing relief was not warranted in Appellant's case. Subsequently, the military judge signed the EoJ faithfully reflecting the judgment of the court-martial. Consequently, the convening authority's "no action" decision in compliance with the President's implementation of the MJA, as made plain in R.C.M. 1109 and 1110, was not error. It follows that the judgment entered by the military judge in Appellant's case is correct in fact and law.

### 1. United States v. Finco

Nonetheless, this conclusion that the convening authority did not err because he followed Article 60, UCMJ, and R.C.M. 1109 and 1110 as implemented by the President in the 2019 *MCM*, invites comparison to a recent decision by this court that reached a different result on similar facts. Appellant, like the appellant in *United States v Finco*, was convicted of offenses that were committed on or after 24 June 2014[12] and before 1 January 2019, that were referred after that date. *See Finco*, unpub. op. at *1–3, 12. The military judge in *Finco* sentenced the appellant to a bad-conduct discharge, confinement for five months, reduction to the grade of E-1, and a reprimand. *Id.* at *1–2. After reviewing that appellant's clemency matters, the convening authority signed a decision memorandum that stated, "I take no action on the sentence of this case." *Id.* at *2. The same day that the convening authority signed his decision memorandum, the military judge signed the EoJ. *Id*. In *Finco*, this court determined that "the decision to take no action on the sentence was a plain or obvious error" and remanded the case to the Chief Trial Judge, Air Force Trial Judiciary, "to resolve a substantial issue with the convening authority's decision memorandum as no action was taken on Appellant's adjudged sentence as required by law." *Id.* at *15, 20–21.

---

[11] The convening authority had the power to reduce, commute, or suspend, in whole or in part, Appellant's adjudged confinement, forfeiture of pay, and reduction in grade. *See* R.C.M. 1109(c)(5) (2019 *MCM*).

[12] Because the court's opinion referenced Article 60, UCMJ, in the 2016 *MCM*, *see United States v. Finco*, No. ACM S32603, 2020 CCA LEXIS 246, at *8 (A.F. Ct. Crim. App. 27 Jul. 2020) (unpub. op.), which was effective on 24 June 2014, FY14 NDAA, Pub. L. No. 113-66, § 1702, 127 Stat. 672, 958 (2013), we can presume that the appellant in *Finco* committed the charged offenses no earlier than on or after that date.

This court's *Finco* decision did not rely on R.C.M. 1109 and 1110 in the 2019 *MCM*, or attach any significance to, much less acknowledge, the President's implementation of these rules in Exec. Order 13,825, § 5. Instead, *Finco* singularly focused on § 6(b) of this same Executive Order. As applicable to cases like Appellant's and *Finco* where there is a conviction for at least one offense committed before 1 January 2019 that was referred on or after that date, § 6(b) guides a convening authority to apply the legacy provisions of Article 60 in the 2016 *MCM*, or earlier, on the one hand, or the amended Article 60 in the MJA that appears in the 2019 *MCM*, on the other. *Id.* at *8–9, 11–12. Section 6(b) states in pertinent part:

> If the accused is found guilty of a specification alleging the commission of one or more offenses before January 1, 2019, Article 60 of the UCMJ, as in effect on the date of the earliest offense of which the accused was found guilty, shall apply to the convening authority . . . to the extent that Article 60:
>
> (1) requires action by the convening authority on the sentence
>
> . . . .

Exec. Order 13,825, § 6(b), 83 Fed. Reg. at 9890 (8 Mar. 2018).

By the terms of § 6(b), the convening authority in *Finco* and in Appellant's case was required to follow Article 60 as it appears in the 2016 *MCM*, but only "to the extent that" Article 60 "*requires* action by the convening authority on the sentence." (Emphasis added). If effectuating a sentence does not *require* a convening authority to take action, then § 6(b)'s direction to a convening authority to follow "Article 60 of the UCMJ, as in effect on the date of the earliest offense of which the accused was found guilty," is inapposite.

*Finco* looked to the language in Article 60 in the 2016 *MCM*, and found the necessary words of obligation in Article 60(c)(2)(A), UCMJ, that it determined bound the convening authority to take action. This provision states without qualification that "[a]ction on the sentence of a court-martial shall be taken by the convening authority."[13] *See Finco*, unpub. op. at *8. By looking to Article 60(c)(2)(A) in the 2016 *MCM* to understand § 6(b) of the Executive Order, a

---

[13] The *Finco* court found solidarity with a decision by our sister-service court in *United States v. Coffman*, 79 M.J. 820 (A. Ct. Crim. App. 2020), in which a convening authority took no action by indicating "N/A" to denote "action on the findings and/or sentence." *Finco*, unpub. op. at *12–13 (quoting *Coffman*, 79 M.J. at 821); *see also id.* at *13 (agreeing with the *Coffman* court's finding that the convening authority "erred in his noncompliance" with the earlier version of Article 60, UCMJ, that required action on the sentence (quoting *Coffman*, 79 M.J. at 822)).

convening authority would have to disregard the President's implementation of R.C.M. 1109 and 1110 that went into effect on 1 January 2019 in every case where there is a conviction for at least one offense committed before, and referred on or after, that date. Paradoxically, effective on the same date that the President's implementation of these rules went into effect, *Finco* nullified their application in cases when a convening authority determines that granting sentencing relief is not authorized or warranted.

Without question, a convening authority cannot "take no action on the sentence" in compliance with R.C.M. 1109 and 1110 in the 2019 *MCM*, and at the same time satisfy the language in Article 60(c)(2)(A), UCMJ, in the 2016 *MCM*. However, *Finco* made an assumption that a convening authority was bound by Article 60(c)(2)(A), finding that "the convening authority cannot simultaneously 'take no action on the sentence'" and satisfy the *Finco* court's *interpretation* of the language of the President's implementation in § 6(b). The *Finco* court concluded, "[W]e need look no further than the plain language of the decision memorandum and determine that the convening authority erred when he purported to take no action on the sentence when Exec. Order 13,825, § 6(b)(1), required him to do so." *Id*. Although unstated in its decision, it is apparent that the *Finco* court found the language of § 6(b) plain as well to reach the conclusion that it did.

What the decision in *Finco* did not do is address an unmistakable contradiction between the President's implementation of R.C.M. 1109 and 1110 in Exec. Order, § 5, on the one hand, and the *Finco* court's reading of Exec. Order, § 6(b), on the other. In the case before us as in *Finco*, the convening authority cannot abide by the President's implementation of the specific provisions of R.C.M. 1109 and 1110 in § 5 by taking no action on the sentence, and at the same time have a duty to act that the *Finco* court found by its reading of § 6(b) that looked to Article 60(c)(2)(A) in the 2016 *MCM*. The *Finco* decision also failed to explain how its interpretation complied with Congress' direction to the President to implement the MJA by 1 January 2019, notably the post-trial procedures that Congress directed convening authorities to follow to effectuate a sentence.

In reaching the conclusion that the convening authority was required to take action on the sentence, *Finco* interpreted one part of the President's implementation so as to render another part, § 5, meaningless in cases, like Appellant's, where there is a conviction for at least one offense committed before 1 January 2019 that was referred on or after that date, and the convening authority determines no sentencing relief is warranted. By taking "no action" in compliance with R.C.M. 1109 and 1110 in the 2019 *MCM* as the President intended in Exec. Order, § 5, the *Finco* court would find error in an essential and recurring post-trial responsibility that was directed by Congress in the MJA:

the manner by which convening authorities effectuate sentences for convictions for pre-1 January 2019 offenses that are referred on and after that date.

Of greater significance, the assignment by Congress to the President to designate the effective date of the MJA amendments, was not without limitation. As previously noted, Congress directed that the President's implementation of the Act "shall take effect" not later than 1 January 2019.[14] The amendments to the UCMJ include changes Congress made to the procedural provisions in Article 60 whereby a convening authority may take no action to effectuate a sentence. But the *Finco* court's interpretation of Exec. Order 13,825, § 6(b)(1), would require a convening authority to continue to take action on a sentence in accordance with the legacy provisions of Article 60 until the date of the earliest offense of which the accused was found guilty was on or after 1 January 2019. Thus, if the *Finco* court's interpretation of Exec. Order 13,825, § 6(b), was correct, it would operate to delay implementation of a key MJA provision well past 1 January 2019.[15] With few exceptions, notably Exec. Order 13,825, §§ 6(a), 9, 10, the President's implementation of the MJA applies to offenses committed or alleged before 1 January 2019. The provisions implemented by exception in §§ 6(a), 9, and 10 relate to substantive rights of an accused. Had the President intended the changes to the manner by which a convening authority effectuates a sentence in Article 60 in the 2019 *MCM* to begin on or after 1 January 2019, one might reasonably conclude that the President would have done so expressly instead of—as the *Finco* court's interpretation would require—by implication. Thus, a delayed implementation in the manner by which a sentence is effectuated in the 2019 *MCM* would raise questions not just about the responsibility of a convening authority under the President's implementation of the MJA, but also, and more fundamental, whether the President's implementation schedule was in compliance with Congress' direction that the President shall implement the Act not later than 1 January 2019.

**2. Executive Order 13,825**

Executive agencies "must always 'give effect to the unambiguously expressed intent of Congress.'" *Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 326 (2014) (quoting *National Assn. of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 665 (2007)). The United States Court of Appeals for the Armed

---

[14] *See* FY17 NDAA, Pub. L. No. 114-328, § 5542(a).

[15] Notably, it is incongruent that, effective 1 January 2019, Congress would eliminate in the MJA the requirement that a convening authority consider the written recommendation of a staff judge advocate before taking action in a general court-martial or any special court-martial case that includes a bad-conduct discharge, as required by legacy provisions of Article 60, *see, e.g.*, Article 60(e), UCMJ, 10 U.S.C. § 860(e) (2016 *MCM*), but still require a convening authority to take action to effectuate all sentences.

Forces (CAAF) has similarly cautioned that it "has no license . . . to construe statutes in a way that 'undercut[s] the clearly expressed intent of Congress.'" *United States v. McPherson*, 73 M.J. 393, 396 (C.A.A.F. 2014) (quoting *United States v. Bartlett*, 66 M.J. 426, 428 (C.A.A.F. 2008) (alteration in original)).

The CAAF has recognized that ordinary rules of statutory construction are helpful "when analyzing a rule promulgated by the President," which would seemingly embrace analysis of an executive order. *United States v. Murphy*, 74 M.J. 302, 305 (C.A.A.F. 2015) ("[I]n determining the scope of a statute, we look first to its language" and "apply the same interpretive process when analyzing a rule promulgated by the President." (internal quotation marks omitted)); *see also United States v. Fetrow*, 76 M.J. 181, 185–86 (C.A.A.F. 2017) (rules of statutory construction are helpful in analyzing provisions of the *Manual for Courts-Martial*). It follows then that judicial review of the President's Executive Order implementing the MJA is not unlike review of an agency's construction of a statute.

When two provisions "initially appear to be in tension," the provisions should be interpreted in a way that render them compatible, not contradictory.[16] *United States v. Kelly*, 77 M.J. 404, 407 (C.A.A.F. 2008) ("[T]his Court typically seeks to harmonize independent provisions of a statute." (citing *United States v. Christian*, 63 M.J. 205, 208 (C.A.A.F. 2006)). "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Kelly*, 77 M.J. at 406–07 (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (internal quotation marks omitted)). "As is true of interpretation of statutes, the interpretation of an Executive Order begins with its text." *Bassidji v. Goe*, 413 F.3d 928, 934 (9th Cir. 2005) (citation omitted). Thus, when an interpretation of the text of one provision in an executive order works against another provision or an act of Congress, there is good reason to reject that interpretation and look for another.

The place to begin is with the text of the President's implementation. Sections 5 and 6(b) of the Executive Order initially appear to be in tension, so each

---

[16] There may be essential differences between application of some interpretive canons to executive and legislative action. For example, the President's implementation of a rule in one provision of Exec. Order 13,825 (§ 5), and a statute on which the same rule depends in another provision (§ 6(b)) would not obviously trigger the "'hierarchical sources of rights' in the military justice system" whereby the highest source of authority is generally paramount. *See United States v. Czeschin*, 56 MJ 346, 348 (C.A.A.F. 2002). In the absence of language making it clear that the President's implementation of the statute controls over implementation of the rule, one cannot assume that the President intended that the former controls the latter in the same executive order promulgated under the same implementation authority assigned by Congress.

provision will be examined in turn. The language of § 5 plainly implements the R.C.M. and the text is not subject to more than one possible meaning. It states that "[t]he amendments in Annex 2 [of Executive Order 13,825] . . . shall take effect on January 1, 2019." 83 Fed. Reg. at 9890. As previously discussed, Annex 2 includes the President's implementation of R.C.M. 1109 and 1110 in the 2019 *MCM* that went into effect for cases referred to trial by court-martial on and after 1 January 2019. The fact that § 5 enumerates three inapposite exceptions to the application of these amendments suggests that there are no other exceptions, lending further validity to the conclusion that the convening authority did not err when he followed R.C.M. 1109 and 1110 in effectuating the sentence adjudged in Appellant's case.

Whereas § 5 requires looking no further than that provision to determine its meaning and application, § 6(b), in contrast, directs practitioners to first look to the legacy provisions of Article 60, UCMJ, to resolve which version of Article 60 may apply to a particular case, and also, to what extent. This is so because § 6(b) states that "Article 60 of the UCMJ, as in effect on the date of the earliest offense of which the accused was found guilty, shall apply to the convening authority . . . *to the extent that Article 60 . . . requires action by the convening authority on the sentence . . . .*" *Id.* (emphasis added). The phrase "to the extent that" is one of limitation that precludes blanket application of legacy provisions of Article 60. This qualifying language makes clear that individual provisions of Article 60 in the 2019 *MCM* will bind a convening authority unless any one of several conditions is present in Article 60, UCMJ, as was in effect on the date of the earliest offense. First among those conditions is if a legacy provision of an earlier version of Article 60 "requires action by the convening authority on the sentence." Exec. Order 13,825, § 6(b)(1), 83 Fed. Reg. at 9890.

The term "action," as discussed earlier, has a precise, specialized meaning in the 2019 *MCM* that differs from its more comprehensive meaning to effectuate a sentence before the MJA's implementation. Thus, a full understanding of the applicability of § 6(b) to Appellant's case entails an examination of Article 60 in the 2016 *MCM* for a circumstance in which a convening authority is required to grant relief (i.e. take action) on the sentence. If such a circumstance was present in a case like Appellant's—where at least one offense was committed on or after 24 June 2014 and before 1 January 2019, that was referred on or after that date—then the convening authority might indeed be required to take action on the sentence by following one or more provisions of Article 60 in the 2016 *MCM*. Such a circumstance would be within the meaning of the President's implementation in § 6(b).

One such circumstance that protects a critical right of an accused, is the convening authority's legal duty to honor and effectuate a pretrial agreement

(PTA) with an accused. As a matter of law, a convening authority has no power under any specific provision in the 2019 *MCM* to enforce a sentence limitation of a PTA, known as a "plea agreement" in the MJA. Instead, such agreements have binding effect upon their acceptance by a military judge.[17] An accused automatically gets the benefit of the agreement without the convening authority having to take action or approve a sentence to comply with the agreement. However, this novel approach to the manner by which agreed-upon sentence limitations are enforced in the MJA takes effect only in cases unlike Appellant's "in which all specifications allege offenses committed on or after January 1, 2019." *See* Exec. Order 13,825, § 10, 83 Fed. Reg. at 9890–91. Conversely, in cases like Appellant's where there is a conviction for at least one offense committed after 24 June 2014 and before 1 January 2019 that was referred on or after that date, a PTA may be consequential and the convening authority would be required to follow the legacy provisions of Article 60 (2016 *MCM*), and take action to both honor and effectuate a sentence as agreed to in the PTA. This is perhaps best illustrated by two examples that show the different applications of Article 60. The first example closely tracks Appellant's case in which the convening authority properly applied Article 60 and R.C.M. 1109 and 1110 from the 2019 *MCM*. The second example reveals when a convening authority would be required to apply Article 60 and R.C.M. 1107 from the 2016 *MCM* if the sentence and the terms of Appellant's PTA had been different.

Here, Appellant was convicted of offenses committed before 1 January 2019 that were referred after that date, and the adjudged sentence did not exceed a limitation on sentence in Appellant's PTA with the convening authority. It follows then that granting sentencing relief (action) was not *required* under Article 60 in the 2016 *MCM* that was in effect on the date of Appellant's earliest offense. Because the convening authority was not compelled to follow any legacy provisions of Article 60 that predate implementation of Article 60 in the 2019 *MCM*, the convening authority could effectuate the sentence, as he did, by taking no action in accordance with Article 60 and R.C.M. 1109 and 1110 as codified in the 2019 *MCM*.

Conversely, if Appellant's PTA with the convening authority had capped confinement at greater than six months (e.g., eight months), and the sentence adjudged by the court-martial exceeded this limitation (e.g., ten months), then the convening authority would have been *required* to follow Article 60 and R.C.M. 1107 in the 2016 *MCM* "*to the extent that Article 60 . . . requires action by the convening authority on the sentence*" as directed by Exec. Order, § 6(b)(1).

---

[17] *See* Article 53a(d), UCMJ, 10 U.S.C. § 853a(d) (2019 *MCM*).

(Emphasis added). This is so because there is no legal authorization in the 2019 *MCM* for the convening authority to honor the agreement and effectuate the sentence—as there is in the 2016 *MCM*—by either granting clemency[18] or enforcing a sentence limitation in a PTA.[19] In such a case the convening authority, quite literally, would be *required* to grant relief (i.e., take action) on the sentence by following Article 60 in effect on the date of the earliest offense.[20] Without the legacy provision in Article 60 that allows the convening authority to take the required action on the sentence,[21] the convening authority would be in breach of the PTA if Article 60 (2019 *MCM*) was the only legal authority the convening authority had to effectuate a sentence.

In cases that are referred to trial on or after 1 January 2019, there can be no mistaking Congress' intent that a convening authority's taking "no action" on the sentence effectuates the adjudged sentence in the same way that a convening authority once approved the sentence without modification under the former Article 60 (2016 *MCM*). And, there is no mistaking Congress' assigning to the President the authority to implement the MJA, consistent with this intent, no later than 1 January 2019. Our superior court has "continually reiterated that the Uniform Code of Military Justice controls when an executive order conflicts with part of that Code." *United States v. Pritt*, 54 M.J. 47, 50

---

[18] In cases like Appellant's, a convening authority has no authority in the 2019 *MCM* to reduce or commute a sentence of confinement, if the total period of confinement imposed for all offenses is greater than six months. *See* Article 60a(b)(1)(A), 10 U.S.C. § 860a(b)(1)(A), and R.C.M. 1109(c)(5)(A) (2019 *MCM*) (permitting a convening authority to "reduce, commute, or suspend, in whole or in part" the confinement portion of a sentence that is *six months or less*).

[19] In cases like Appellant's, there is no provision similar to Article 60(c)(4)(C), UCMJ (2016 *MCM*), in the 2019 *MCM* that would authorize a convening authority to honor and effectuate an agreed-upon sentencing limitation in a PTA:

> If a pre-trial agreement has been entered into by the convening authority and the accused, as authorized by Rule for Courts-Martial 705, the convening authority or another person authorized to act under this section shall have the authority to approve, disapprove, commute, or suspend a sentence in whole or in part pursuant to the terms of the pretrial agreement . . . .

Article 60(c)(4)(C), UCMJ (2016 *MCM*).

[20] R.C.M. 1107 implements Article 60 to the 2016 *MCM*. Of note, nothing in the MJA or the President's implementation of the Act operate to repeal the R.C.M. that applied Article 60 in effect before 1 January 2019.

[21] *See*, *e.g.*, Article 60(c)(4)(C), UCMJ (2016 *MCM*).

(C.A.A.F. 2000) (citing *United States v. Gonzalez*, 42 M.J. 469, 474 (1995); *United States v. Mance*, 26 M.J. 244, 252 (1988)).

Here, there is no conflict between the President's implementation of the MJA in Executive Order 13,825 and Article 60 (2019 *MCM*) so long as Exec. Order, §§ 5 and 6(b), are each given "full force and effect," *Kelly*, 77 M.J. at 407, on 1 January 2019. Under Exec. Order, § 6(b)(1), a convening authority looks to the legacy provisions of Article 60 to the extent that a convening authority may be required to take action on the sentence. Because "action" in the 2019 *MCM* means "granting relief," practitioners accustomed to "action" being synonymous with effectuating the results of a court-martial in a pre-2019 *MCM* provision may best relate to the contemporary meaning of "action" if § 6(b)(1) is restated thusly,

> If the accused is found guilty of a specification alleging the commission of one or more offenses before January 1, 2019, Article 60 of the UCMJ, as in effect on the date of the earliest offense of which the accused was found guilty, shall apply to the convening authority . . . to the extent that Article 60:
>
> (1) requires [granting relief] by the convening authority on the sentence[22]
>
> . . . .

Exec. Order 13,825, 83 Fed. Reg. at 9890.

This reading of § 6(b) affords "action" its contemporary meaning that is narrower than its legacy use in prior editions of the *Manual*. *See United States v. Andrews*, 77 M.J. 393, 400 (C.A.A.F. 2018) (questions of interpretation should begin and end with the text, "giving each word its ordinary, contemporary, and common meaning" (quoting *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017))). It also avoids a nullification of the President's implementation of R.C.M. 1109 and 1110 in every case where there is a conviction for at least one offense committed before, and referred on or after, 1 January 2019, and a convening authority determines action on the sentence is not warranted. Moreover, this reading of § 6(b) affords an accused a substantive right to have a convening authority honor a PTA—and not merely specifying the

---

[22] Or, to rephrase grammatically, ". . . requires the convening authority to grant relief on the sentence."

manner by which a convening authority effectuates a sentence—that is in harmony with other substantive provisions of § 6(b) that also protect an accused's rights under legacy provisions of Article 60.[23]

In summary, in cases, like Appellant's, where there is a conviction for at least one offense committed before 1 January 2019 that was referred after that date and sentencing relief is not authorized or warranted as determined by the limits of the convening authority's clemency power and consideration of an appellant's clemency submission, then the convening authority first looks to Article 60 and the corresponding R.C.M. that were in effect on the date of the earliest offense. If the convening authority determines that granting relief (i.e. action) is not required under that version of Article 60, for example, to enforce a limitation on sentence in a PTA, then the convening authority follows Article 60 and R.C.M. 1109 and 1110 in the 2019 *MCM* to effectuate the sentence. If, however, the convening authority determines that action on the sentence is required under the version of Article 60 in effect on the date of the earliest offense because granting relief is required to effectuate the sentence—as may be the case with a sentence limitation in a PTA—then the convening authority is required to follow a provision in an earlier version of Article 60 and the corresponding R.C.M. that give effect to the convening authority's statutory responsibility to act on the sentence.

**D. Conclusion**

There is no tension, much less contradiction, with Exec. Order 13,825, § 5, or other provisions of the President's implementation of the MJA, so long as "action" on the sentence is given its contemporary meaning, "granting relief," where the term "action" appears in Exec. Order 13,825, § 6(b)(1).

Even so, in many if not all cases referred on and after 1 January 2019, a convening authority's decision not to act may be the equivalent of taking action to effectuate a sentence (in a legacy sense) as Appellant suggests that it was in his case. Ultimately, it may not matter if it is determined whether or not a convening authority erred in cases like Appellant's where no action is taken, or conversely, a case where a convening authority approves the sentence even though the applicable provision of Article 60 does not require action to effectuate the sentence. What matters most is that a convening authority makes clear whether sentencing relief has been granted an appellant and to what extent.

---

[23] The guidance in Exec. Order, § 6(b), addresses an accused's substantive rights in regard to the findings (Subsection (2)), the adjudged sentence (Subsections (1) and (5)), both the finding and the sentence (Subsection (3)), and a proceeding in revision or a rehearing (Subsection (4)). *See* Exec. Order, 13,825, § 6(b)(1)–(5), 83 Fed. Reg. at 9890.

So long as the sentence that the convening authority intended to effectuate is apparent from the decision memorandum,[24] an appellant may not be prejudiced even if a convening authority's compliance with Executive Order 13,825 may be interpreted differently by Courts of Criminal Appeals or even by different panels.

I do not reach the question of prejudice, however, because I find that the convening authority fully complied with the President's implementation of the MJA, and did not err by taking "no action" on the sentence that was adjudged after Appellant's trial, and that the military judge correctly entered as the judgment of the court-martial.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[24] *See, e.g.*, *United States v. Politte,* 63 M.J. 24, 26 (C.A.A.F. 2006) (requiring a "clear and unambiguous convening authority action").