*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

─────────────

### UNITED STATES
Appellant

**v.**

### Justin L. FETROW, Technical Sergeant
United States Air Force, Appellee

**No. 16-0500**

Crim. App. No. ACM 38631

Argued October 25, 2016—Decided April 17, 2017

Military Judge: Matthew P. Stoffel

For Appellant: *Captain Tyler B. Musselman* (argued); *Colonel Katherine E. Oler* and *Gerald R. Bruce*, Esq. (on brief)

For Appellee: *Major Johnathan D. Legg* (argued); *Colonel Jeffrey G. Palomino.*

Judge SPARKS delivered the opinion of the Court, in which Chief Judge ERDMANN, and Judges STUCKY, RYAN, and OHLSON, joined.

─────────────

Judge SPARKS delivered the opinion of the Court.

Appellee was tried by a general court-martial composed of officer and enlisted members. Contrary to his pleas, he was convicted of attempted abusive sexual contact with a child, attempted aggravated sexual abuse of a child, abusive sexual contact with a child, two specifications of aggravated sexual abuse of a child, and two specifications of aggravated sexual contact with a child, in violation of Articles 80 and 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C §§ 880, 920 (2006).[1] The convictions were all based on the ver-

─────────────

[1] Appellee was found not guilty of four specifications of sexual abuse of a child (Article 120, UCMJ); one specification of aggravated sexual contact with a child (Article 120, UCMJ); one specification of abusive sexual contact with a child (Article 120, UCMJ): and one specification of indecent acts with a child (Article 134, UCMJ, 10 U.S.C. § 934). Three of the above specifications were dismissed by the military judge pursuant to a defense motion to dismiss under M.R.E. 917.

sion of Article 120, UCMJ, in effect between October 1, 2007, and June 27, 2012. The members sentenced Appellee to a dishonorable discharge, confinement for twenty-five years, forfeiture of all pay and allowances, and reduction to pay grade E-1. Except for the forfeitures, the convening authority approved the sentence as adjudged. On appeal to the United States Air Force Court of Criminal Appeals, Appellee raised, among other issues, his unsuccessful challenge at trial to the testimony of his biological daughter which was admitted as propensity evidence under Military Rule of Evidence (M.R.E.) 414. The lower court agreed with Appellee in part that the military judge had erred in admitting the testimony about two of three incidents and that Appellee was prejudiced by the error. *United States v. Fetrow*, 75 M.J. 574, 578 (A.F. Ct. Crim. App. 2016).

The Judge Advocate General of the Air Force then certified the following two questions for our review:

I. Whether the Air Force Court of Criminal Appeals committed legal error when it found that in order for conduct to constitute child molestation under Mil. R. Evid. 414, the conduct must have been an offense under the UCMJ, or federal or state law, at the time it was committed and, if offered under Mil. R. Evid. 414(d)(2)(a)-(c), that the conduct must meet the definition of an offense listed under the version of the applicable enumerated statute in effect on the day of trial.

II. Whether the Air Force Court of Criminal Appeals committed legal error when it found that the erroneous admission of two acts of indecent liberties committed by Appellee on his child age daughter had a substantial influence on the members' verdict requiring set aside of the findings and sentence.

We agree with the lower court's analysis and conclusions that the military judge erred, and we are not persuaded that the error was harmless.

## BACKGROUND

As of the trial date, Appellee and his wife, Mrs. JNF, had been married nine years.[2] Appellee and his wife had a blended family consisting of six children. *Fetrow*, 75 M.J. at 577. As laid out by the lower court, Appellee "brought two children into the marriage, Mrs. JNF brought two children into the marriage, and Appellee and Mrs. JNF had two biological children together." *Id.* "The allegations of sexual abuse in this case involved the two children that Mrs. JNF brought into the marriage, JB and JH." *Id.* The certified issues under consideration relate to the testimony of JLF, Appellee's biological daughter born before Appellee's marriage to Mrs. JNF.

In January 2013, JH reported to a school counselor that Appellee sexually abused her. *Id.* Her sister, JB, subsequently alleged that Appellee had previously sexually abused her. *Id.* By the time of trial, however, JH had recanted her allegations and did not testify on the findings or during sentencing. *Id.* The Government's key evidence in the case was the testimony of JB who was seventeen years old at the time of trial. She testified to two distinct time periods: one, six years earlier, when Appellee sexually abused her while her family was living in South Carolina, and another, two years prior to trial, when the family lived in Wyoming. *Fetrow*, 75 M.J. at 577. In addition, she testified to three incidents when Appellee sexually abused her sister JH in her presence. *Fetrow*, 75 M.J. at 577. JB's testimony described a number of incidents of abuse, including Appellee touching and licking her vagina, and paying her to show him her breasts, touch his penis, and perform other sexual acts with him. At trial the defense moved in limine to exclude testimony from Appellee's biological daughter, JLF, expected to be offered by the Government as propensity evidence under M.R.E. 414. JLF's testimony described three separate incidents involving Appellee's conduct with her. The military judge made the following findings:

> [1] The first alleged incident JLF described took place at or near Charleston, South Carolina, some-

---

[2] The trial of these offenses took place between November 12, 2013, and February 13, 2014.

time between June 2001 and December 2001. She
stated that on one occasion while she was approxi-
mately 3-4 years of age and living with the Ac-
cused, the Accused placed her in a bedroom closet
while he had sex with a woman.

She believed they were having sex because both the
Accused and the woman were naked and were
"humping." While the Accused and the woman were
engaged in sexual activity, JLF was able to see the
sexual activity because the closet door was slightly
open . . . .

[2] JLF also stated that on one occasion around the
same time, the Accused touched her on her upper
thigh. The touching allegedly occurred while JLF
and the Accused built tents made of blankets. No
other adult was present when the touching oc-
curred, JLF described the touching as seductive in
nature and explained that the Accused touched her
knee with his hand and moved his hand slowly up
her leg. JLF became visibly upset while testifying
regarding this incident.

[3] JLF also described an incident where she saw
the Accused's penis. This occurred in Summerville,
South Carolina, while she was approximately 8-9
years old. JLF was spending the summer with the
Accused, though she normally lived with her moth-
er . . . . On this occasion, the Accused exposed his
penis to JLF while in the bathroom of their resi-
dence while running bathwater. The Accused had
removed his pants, and while sticking his foot in
the bathtub, he moved his foot quickly and made a
comment about the water being too hot. The Ac-
cused still was wearing his shirt. Shortly thereaf-
ter, someone walked into the house, and the Ac-
cused told JLF to leave. At a later point, the
Accused questioned JLF on whether she laughed
when she saw his penis.

*Fetrow*, 75 M.J. at 578 (alterations in original). The military
judge concluded that each of these incidents was "a qualify-
ing offense of child molestation . . . in violation of Article 120
and 120b," and denied the motion to exclude. Appellee was
ultimately convicted of a number of the offenses to which JB
testified regarding the abuse that occurred to her, as well as

offenses she witnessed committed against JH. *Fetrow*, 75 M.J. at 577.

In its opinion, the Court of Criminal Appeals provided a brief recitation of the development of M.R.E. 414, and an analysis of what constitutes an offense of child molestation admissible as propensity evidence under the rule. *Fetrow*, 75 M.J. at 580-81. After a thoughtful analysis, it concluded that conduct qualifying for admission as "any other offense of child molestation" was limited to conduct that was an offense punishable under the UCMJ, or a crime under federal or state law *at the time the conduct occurred*. It further concluded that regarding M.R.E. 414(d)(2)(A) in particular, that provision was limited to Article 120, UCMJ, only (not Article 120b, UCMJ), and only the version in effect at the time of trial. *Fetrow,* 75 M.J. at 581-82.

Thus, our task is to determine the limits of the language of M.R.E. 414 sanctioning the admissibility of evidence of "any other offense of child molestation." Since we agree with the lower court, we reach our conclusion by following a path similar to its well-reasoned analysis.

## DISCUSSION

The standard of review for a military judge's decision to admit evidence is abuse of discretion. *United States v. Yammine*, 69 M.J. 70, 73 (C.A.A.F. 2010). The question of whether the admitted testimony constitutes evidence that the accused committed another offense of child molestation under M.R.E. 414 is one of law, reviewed de novo. *Id*. Resolution of the certified questions necessitates close examination of the language of the rule. Questions involving the construction of statutes and rules are reviewed de novo. *United States v. Schloff*, 74 M.J. 312, 313 (C.A.A.F. 2015).

Admissibility under M.R.E. 414 requires the following findings by the military judge:

 (1) whether the accused is charged with an act of child molestation as defined by M.R.E. 414(a);[3] (2)

---

[3] M.R.E. 414(a) states:

> In a court-martial proceeding in which an accused is charged with an act of child molestation, the military judge may admit evidence that the accused committed any other

5

> whether the proffered evidence is evidence of his commission of another offense of child molestation as defined by the rule; and (3) whether the evidence is relevant under M.R.E. 401 and M.R.E. 402.

*Yammine,* 69 M.J. at 73-74 (footnote added). The second element of this inquiry is at issue here. The rule, in relevant part, defines "another offense of child molestation" as follows: " 'Child molestation' means any offense punishable under the Uniform Code of Military justice, or a crime under federal law or under state law . . . that involves: (A) any conduct prohibited by Article 120 and committed with a child." M.R.E. 414(d)(2)(A). The task at hand is to determine how this provision should be interpreted to best reflect the intent of the President.

The rules of statutory construction, although generally applied to construe statutes, are helpful in analyzing evidentiary rules as well as other provisions of the *Manual for Courts-Martial*. We begin by simply reading the plain language of the rule giving effect to every clause and word. *Duncan v. Walker*, 533 U.S. 167, 172 (2001); *United States v. Kearns*, 73 M.J. 177, 181 (C.A.A.F. 2014). The words used in the rule "should be given their common and approved usage." *United States v. McCollum*, 58 M.J. 323, 340 (C.A.A.F. 2003) (internal quotation marks omitted) (quoting *United Scenic Artists v. NLRB*, 762 F.2d 1027, 1032 n.15 (D.C. Cir. 1985). We are mindful that we construe the rule so as to avoid rendering any language superfluous or redundant. *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995); Murphy *Exploration & Prod. Co. v. Dept. of Interior*, 252 F.3d 473, 481 (D.C. Cir. 2001). We have previously stated that we construe the text of M.R.E. 414 strictly rather than expansively. *Yammine*, 69 M.J. at 75.

We begin by examining the phrases, "any offense punishable under the [UCMJ]" and "a crime under federal law or state law." We agree with the lower court's reasonable conclusion that the prior conduct must have been against the law at the time it occurred. Otherwise, it would have

---

> offense of child molestation. The evidence may be considered on any matter to which it is relevant.

been lawful conduct and thus, not "a crime" or "an offense punishable."

We also agree with the lower court that the similar crimes must involve conduct listed in the version of M.R.E. 414 in effect at the time of trial. The current version of M.R.E. 414 is always the President's most recent determination of what criminal conduct is potentially relevant for propensity purposes in child molestation cases. Section (d)(2)(A)-(G) of M.R.E. 414 provides an exclusive list of conduct and the similar crimes evidence must fall within those categories. *Yammine*, 69 M.J. at 74-75. To the extent those categories incorporate specific criminal statutes, the prior conduct at issue must constitute a crime under those statutes in effect on the day of trial. Accordingly, we adopt the two-part analysis established by the Court of Criminal Appeals for determining whether uncharged acts qualify as other offenses of child molestation, namely, (1) whether the conduct constituted a punishable offense under the UCMJ, federal law, or state law when the conduct occurred; and (2) whether the conduct is encompassed within one of the specific categories set forth in the version of M.R.E. 414 (d)(2)(A)-(G) in effect at the time of trial.

## ANALYSIS

We turn to whether the three uncharged incidents meet the two-part test set out above. For ease we will refer to these incidents as the closet incident, the tent incident, and the bathroom incident. As noted earlier, the military judge admitted evidence of all three incidents concluding that each qualified as an offense of child molestation in violation of Articles 120 and 120b, UCMJ.

We begin with the tent incident. The military judge found that on one occasion when JLF and Appellee were building tents made with blankets, Appellee touched JLF on her upper thigh. He found that JLF explained that Appellee touched her knee with his hand and moved his hand slowly up her leg and described this touching as seductive in nature. JLF's actual testimony was that the touch was "[l]ike a seduced—a seducing type. . . . [b]ecause it was slow, and it didn't feel right to me. . . . It didn't feel like how a dad is supposed to be interacting with a daughter."

The Court of Criminal Appeals looked to the 2001 version of indecent acts with a child under Article 134, UCMJ. It noted the elements of that offense[4] and the definition of the term "indecent."[5] The court concluded that the alleged conduct constituted an offense punishable under the UCMJ when it was committed. *Fetrow*, 75 M.J. at 583. The court then considered whether the conduct fell within the prohibition found in the version of M.R.E. 414 (d)(2)(A) in effect at the time of trial. The lower court found the military judge's specific finding that the tent incident constituted "sexual abuse of a child in violation of Article 120 and Article 120b" was erroneous. We agree. Although sexual abuse of a child was an offense under Article 120b, UCMJ, offenses under that statute were not specifically incorporated into the version of M.R.E. 414(d)(2) in effect at the time of trial. The lower court concluded, and we agree, that the reference to Article 120, UCMJ, in M.R.E. 414(d)(2)(A) at the time did

---

[4] The offense of an indecent act with a child under Article 134, UCMJ, had the following elements:

> (1) That the accused committed a certain act upon or with the body of a certain person;

> (2) That the person was under 16 years of age and not the spouse of the accused;

> (3) That the act of the accused was indecent;

> (4) That the accused committed the act with intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of the accused, the victim, or both; and

> (5) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

*Fetrow*, 75 M.J. at 583 (citing *Manual for Courts-Martial, United States* pt. IV, para. 87.b.(1) (2005 ed.) (*MCM*).

[5] "In this context, 'indecent' conduct 'signifies that form of immorality relating to sexual impurity which is not only grossly vulgar, obscene, and repugnant to common propriety, but tends to elicit lust and deprave the morals with respect to sexual relations.'" *Fetrow*, 75 M.J. at 583 (quoting *MCM* pt. IV, para. 90.c. (2005 ed.)).

not encompass Article 120b, UCMJ.[6] Notwithstanding this conclusion, conducting its de novo review, the court concluded that the alleged conduct could constitute an abusive sexual contact under Article 120, UCMJ. Therefore, in its view the evidence was properly admitted under M.R.E. 414, and we see no reason to disturb this conclusion.

We next consider the closet incident and the bathroom incident. The military judge found both incidents constituted indecent exposure under the pre-October 1, 2007, version of Article 134, UCMJ. However, the Court of Criminal Appeals saw little need to address the first part of the two-part inquiry since it was clear the alleged conduct on both occasions failed to qualify under the second part. As stated above, the court had noted that offenses under Article 120b, UCMJ, were not specifically incorporated into M.R.E. 414(d)(2) as child molestation offenses. The court then looked to M.R.E. 414(d)(2)(A) and examined the offenses enumerated in Article 120, UCMJ, and concluded that the two incidents of indecent exposure were not included as offenses under Article 120, UCMJ, because neither incident involved a sexual act or sexual contact as defined by the rule. *Fetrow*, 75 M.J. at 584-85. After examining the remaining categories under M.R.E. 414(d)(2), the Court of Criminal Appeals concluded, "an indecent exposure to a child, under the facts of this case, does not constitute an offense of 'child molestation' that is admissible as a 'similar crime' under [M.R.E.] 414." *Id.* at 585. We agree.

## PREJUDICE ANALYSIS

Under Article 59(a), UCMJ, a "finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." 10 U.S.C. § 859(a) (2012). "The test for nonconstitutional evidentiary error is whether the error had a substantial influence on the findings." *United States v. Gunkle*, 55 M.J. 26, 30 (C.A.A.F. 2001) (citing *Kotteakos v. United States*, 328 U.S. 750, 765, (1946)). It is

---

[6] On May 16, 2016, the President signed Exec. Order No. 13730, 81 Fed. Reg. 33,331, 33,352, revising M.R.E. 414(d)(2)(A) to read, "any conduct prohibited by Article 120 and committed with a child, *or prohibited by Article 120b."* (Emphasis added.)

the government that bears the burden of demonstrating that the admission of erroneous evidence is harmless. *United States v. Flesher*, 73 M.J. 303, 318 (C.A.A.F. 2014); *United States v. Berry*, 61 M.J. 91, 97-98 (C.A.A.F. 2005). In evaluating whether an erroneous admission of evidence is harmless, we use the four-part analysis set out in *United States v. Kerr*, weighing (1) the strength of the government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question. 51 M.J. 401, 405 (C.A.A.F. 1999).

Although our review for prejudice is de novo, we adopt the lower court's analysis of the first three *Kerr* factors. We also adopt the lower court's analysis of the fourth factor, the quality of the evidence in question. We agree with the lower court's conclusion that JLF's testimony was powerful because it was "apparently emotional and heartfelt," with JLF becoming visibly upset while testifying and telling the members that it was difficult for her to testify because she loved her father. *Fetrow*, 75 M.J. at 586. In addition, we note that evidence erroneously admitted under M.R.E. 414 is unlike most evidentiary error. The very nature of propensity evidence is to permit the trier of fact to infer that since the accused has acted previously in a certain fashion, he was inclined to have acted in conformity with that conduct with respect to the charged offenses. When such evidence is erroneously admitted, the result is that evidence of bad character has been improperly admitted against the accused. M.R.E. 404(b)(1). Since the closet incident was not admissible under M.R.E. 414, it served no purpose other than to suggest to the members that Appellee was an adulterer with no regard for the psychological welfare of his young child. Likewise, the bathroom incident served no probative purpose other than to suggest that Appellee was a poor parent with an odd proclivity for allowing his children to view him unclothed. Whatever one might be inclined to infer about Appellee from the charged offenses, the potential inferences raised by this erroneously admitted evidence were improper. Further, the record discloses that trial counsel led his closing argument with these incidents. We are not convinced that the improperly admitted evidence of Appellee's conduct on these occasions did not have a substantial influence on

the findings resulting in something less than a fair trial for Appellee.

## DECISION

The certified questions are answered in the negative and the decision of the United States Air Force Court of Criminal Appeals is affirmed.