# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39280 (reh)**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Anthony R. LIZANA**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 25 January 2021

————————————

*Military Judge:* Bradley A. Morris (motions); Shelly W. Schools.

*Approved sentence:* Bad-conduct discharge and reduction to E-3. Sentence adjudged 6 March 2019 by GCM convened at Joint Base San Antonio-Lackland, Texas.

*For Appellant:* Major M. Dedra Campbell, USAF; Major Meghan R. Glines-Barney, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Major Anne M. Delmare, USAF.

Before J. JOHNSON, MINK, and KEY, *Appellate Military Judges*.

Chief Judge J. JOHNSON delivered the opinion of the court, in which Senior Judge MINK and Judge KEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

J. JOHNSON, Chief Judge:

At Appellant's original trial, a general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of two speci-

fications of willfully failing to maintain a professional relationship, one speci-fication of negligently failing to maintain a professional relationship, one spec-ification of sexual assault, one specification of assault consummated by a bat-tery, two specifications of adultery, and two specifications of providing alcohol to minors, in violation of Articles 92, 120, 128, and 134, Uniform Code of Mili-tary Justice (UCMJ), 10 U.S.C. §§ 892, 920, 928, 934.[1] The court-martial sen-tenced Appellant to a dishonorable discharge, confinement for three months, hard labor without confinement for one month, forfeiture of $450.00 pay per month for one month, and reduction to the grade of E-3. The convening author-ity reduced the term of hard labor without confinement to nine days and af-firmed the remaining elements of the sentence as adjudged.

Upon our initial review, this court set aside Appellant's sexual assault con-viction as factually insufficient, but affirmed the lesser-included offense of abu-sive sexual contact in violation of Article 120, UCMJ, as well as the other find-ings of guilty. *United States v. Lizana*, No. ACM 39280, 2018 CCA LEXIS 348, at *31 (A.F. Ct. Crim. App. 13 Jul. 2018) (unpub. op.). This court also set aside the sentence and returned the record to The Judge Advocate General for re-mand to the convening authority, who was authorized to direct a rehearing as to the sentence. *Id.* at *31–32.

The convening authority directed a sentence rehearing. A general court-martial composed of a military judge alone sentenced Appellant to a bad-con-duct discharge and reduction to the grade of E-1. The convening authority ap-proved the bad-conduct discharge and reduction to the grade of E-3.

Appellant now raises a single issue on appeal: whether the military judge abused his discretion by refusing to order the production of the medical evalu-ation board records of MH, the abusive sexual contact victim. In addition, alt-hough not raised by Appellant, we consider whether Appellant is entitled to relief for facially unreasonable post-trial delay. We find no error that materi-ally prejudiced Appellant's substantial rights, and we affirm the sentence.

## I. BACKGROUND

Appellant's convictions arose from his behavior with several lower-ranking female Airmen whom Appellant knew from his workplace at Joint Base San Antonio-Lackland, some of whom were Appellant's direct subordinates. The circumstances underlying Appellant's conviction for abusive sexual contact against MH by touching her vaginal area without her consent are described in

---

[1] Unless otherwise noted, all other references to the UCMJ, the Rules for Courts-Mar-tial, and the Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*).

more detail in our prior opinion; it is not necessary to expound them for purposes of this opinion. *Id*. at *17–24. MH was on active duty with the Air Force at the time of Appellant's first court-martial; however, she was subsequently separated from the Air Force as a result of a medical evaluation board (MEB), and was a civilian at the time of Appellant's sentence rehearing.

Prior to the sentence rehearing, the Defense submitted a motion to compel discovery of several types of evidence it asserted was in the possession of the Government, including *inter alia* MH's "MEB discharge package." In support of this request, the Defense cited MH's response to a disciplinary action administered before she separated from the Air Force,[2] in which MH stated she had mental health issues related to Appellant's offense against her. In addition, the Defense contended it needed the MEB discharge package to see if it contained any "conflicting statements."

The Government opposed the Defense's request for the MEB discharge material, contending that trial counsel "d[id] not have access to this, and from what the Government understands, the package is replete with material privileged under [Mil. R. Evid.] 513." Therefore, the Government argued, the Defense was required to seek disclosure of the MEB information in accordance with the procedural requirements of Mil. R. Evid. 513, and it had not done so.

On 13 December 2018, the first military judge assigned to Appellant's sentence rehearing (motions judge) conducted a hearing on the discovery motion. At the hearing, trial defense counsel clarified that any information covered by Mil. R. Evid. 513 might be made the subject of a separate motion, and was not requested by the Defense "at this time." However, trial defense counsel maintained the request for documents regarding MH's medical separation were not covered by Mil. R. Evid. 513. In response, trial counsel told the motions judge:

> [I]t's the government's understanding at this time that there is nothing AFPC [the Air Force Personnel Center] can do to provide those records without a judicial order, based on our conversations with Air Force Personnel Center's records custodian. From my understanding, the records are replete with diagnostic communications between the victim and her providers. To the extent that there may have been a waiver of that privilege in an administrative hearing, the government isn't ready to opine on, but the government's position is that there is a process for determining

---

[2] The Defense obtained the records of this disciplinary action and MH's response from the Government through discovery.

that under MRE 513, and so that issue is not ripe at this moment, because the government cannot access – cannot turn over anything without a judicial order . . . .

After the hearing, the motions judge issued a written ruling on the motion. With respect to MH's MEB discharge records, the motions judge wrote the following:

> This Court finds that this material is not within the possession, custody, or control of military authorities. As such, the Defense is required to abide by the requirements of [Rule for Courts-Martial (R.C.M.)] 701(f)(3) [sic][3] and has failed to do so. Even if they had, this Court would find that the Defense has further failed to show how the MEB materials of MH that occurred after the trial, are relevant and necessary to their sentencing case at this sentence rehearing. Should an Appellate Court later determine the materials were in the possession, custody or control of military authorities in the more broad definition of "military authorities", this Court would have determined that the Defense failed in their burden to show how these documents were material to their preparing an adequate defense to the charge of which he was convicted as required under [R.C.M.] 701 since these materials did not exist at the time of his initial court-martial. Lastly, this Court does not find the materials to be protected by [Mil R. Evid.] 513 as the statements, if any, contained in the materials are no longer confidential due to their disclosure to a third party as part of the MEB process. Regardless, due to the above, this request is **DENIED**.

Appellant's sentence rehearing reconvened on 5–6 March 2019, and was presided over by a different military judge (the trial judge). Appellant elected to be sentenced by the military judge alone. Pursuant to R.C.M. 1001A, MH read an unsworn statement to the trial judge, wherein she described how Appellant's offense had affected her and stated, *inter alia*, "[t]his incident has caused me years of stress and has contributed to an early end to my Air Force career."

After MH read her unsworn statement, the Defense asked the trial judge to reconsider the motions judge's denial of the discovery motion with respect to

---

[3] The 2016 *MCM* does not contain a Rule for Courts-Martial 701(f)(3). Later in the trial, trial defense counsel and the second military judge interpreted the motions judge's intent was to refer to R.C.M. 703(f)(3), which would apply to the production of material that is not in the possession of military authorities that is "relevant and necessary." *See* R.C.M. 703(f)(1).

MH's MEB discharge records. Trial defense counsel asserted that in light of the Defense's right to rebut statements of fact in a victim's unsworn statement, MH's assertion that Appellant's offense contributed to separation from the Air Force made the MEB discharge records "relevant and necessary" to the Defense at the sentence rehearing. When questioned by the trial judge, trial defense counsel could not identify any information he expected to find in the MEB discharge material that would rebut MH's unsworn statement, but he asserted the applicable standard at that point was simply "relevance and necessity" to the Defense under R.C.M. 701.[4]

The trial judge denied the request for reconsideration. She explained:

> The purpose of the law that allows crime victims to provide statements in sentencing is to give them a voice in the process to speak to what they view as the impact of a crime on them personally. I read this statement for exactly what it is; her personal perception and opinion of how she's been impacted by this -- by at least in part -- by this behavior of [Appellant]. I don't read it to mean that any and all of her life struggles are all attributed to [Appellant], but at least some aspect of them are, in her opinion, and she has the right to say that, and I will give it the weight that it deserves in this process.

## II. DISCUSSION

### A. Discovery of MH's MEB Discharge Records

#### 1. Law

We review a military judge's ruling on a motion to compel discovery for an abuse of discretion. *United States v. Roberts*, 59 M.J. 323, 326 (C.A.A.F. 2004) (citation omitted). "A military judge abuses his discretion when his findings of fact are clearly erroneous, when he is incorrect about the applicable law, or when he improperly applies the law." *Id.*

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The United States Supreme Court has extended *Brady*, clarifying "that the duty to disclose such evidence is applicable even though there has been no request by the accused . . . and that the

---

[4] We note "relevant and necessary" is the standard for production of evidence under R.C.M. 703(f)(1). The standard for disclosure of material in the possession of military authorities under R.C.M. 701(a)(2) is "material to the preparation of the defense."

duty encompasses impeachment evidence as well as exculpatory evidence." *Strickler v. Greene*, 527 U.S. 263, 280 (1999); *see United States v. Claxton*, 76 M.J. 356, 359 (C.A.A.F. 2017).

"A military accused also has the right to obtain favorable evidence under [Article 46, UCMJ,] . . . as implemented by R.C.M. 701–703." *United States v. Coleman*, 72 M.J. 184, 186–87 (C.A.A.F. 2013) (footnotes omitted). Article 46, UCMJ, and these implementing rules provide a military accused statutory discovery rights greater than those afforded by the United States Constitution. *See id.* at 187 (additional citation omitted) (citing *Roberts*, 59 M.J. at 327). With respect to discovery, R.C.M. 701(a)(2)(A) requires the Government, upon defense request, to permit the inspection of, *inter alia*, any documents "within the possession, custody, or control of military authorities, and which are material to the preparation of the defense . . . ."

In reviewing discovery matters, we conduct a two-step analysis: "first, we determine whether the information or evidence at issue was subject to disclosure or discovery; second, if there was nondisclosure of such information, we test the effect of that nondisclosure on [Appellant's] trial." *Coleman*, 72 M.J. at 187 (quoting *Roberts*, 59 M.J. at 325). "[A]n appellate court may resolve a discovery issue without determining whether there has been a discovery violation if the court concludes that the alleged error would not have been prejudicial." *United States v. Santos*, 59 M.J. 317, 321 (C.A.A.F. 2004). Where the defense specifically requests discoverable information that is erroneously withheld, the error is tested for harmlessness beyond a reasonable doubt. *Coleman*, 72 M.J. at 187 (citations omitted). "Failing to disclose requested material favorable to the defense is not harmless beyond a reasonable doubt if the undisclosed evidence might have affected the outcome of the trial." *Id.* (citation omitted).

R.C.M. 1001A(e) provides that during presentencing proceedings, the victim of an offense of which the accused has been found guilty "may make an unsworn statement and may not be cross-examined by the trial counsel or defense counsel upon it or examined upon it by the court-martial." The prosecution or defense may rebut statements of fact in a victim's unsworn statement. R.C.M. 1001A(e).

Mil. R. Evid. 513(a) provides:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist or an assistant to a psychotherapist, in a case arising under the [UCMJ], if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition.

The privilege is subject to a number of specific exceptions. Mil. R. Evid. 513(d).

### 2. Analysis

Appellant contends the motions judge abused his discretion by denying the Defense's motion to compel disclosure of MH's MEB discharge records. He asserts the record of trial indicates the information was located at AFPC, and therefore was within the "possession, custody, or control of military authorities." R.C.M. 701(a)(2)(A). He further asserts trial defense counsel demonstrated the information was material, relevant, and necessary because without it the Defense "could not rebut [MH's] unsworn statement and identify the accurate causes of her separation."

The motions judge's ruling on the motion is perplexing in multiple respects. We find no basis in the record for the conclusion that MH's MEB discharge records were not in the possession of military authorities; trial counsel's proffers clearly indicated such records existed at AFPC, a component of the Air Force. The fact that AFPC was unwilling to release sensitive mental health information without a court order did not remove it from the military's possession and control. Moreover, the motions judge's determination that the Defense "failed in their burden to show how these documents were material to their preparing an adequate defense to the charge" because "these materials did not exist at the time of his initial court-martial" was inapposite. The records evidently existed at the time of Appellant's sentence rehearing, and Appellant had a right to discovery of information in the possession of the Air Force that was material to the preparation of his defense at a sentence rehearing, provided it was otherwise discoverable under the Rules for Courts-Martial and Military Rules of Evidence. Furthermore, we are puzzled by the judge's pronouncement in his ruling that the records in question were not protected by Mil. R. Evid. 513 given that he did not have adequate information to determine whether the privilege was applicable to the information in the records at issue, and such a determination was unnecessary for his ruling.

However, we decline to definitively determine whether the failure to compel disclosure of the MEB records was error. We question whether the Defense made an adequate demonstration of materiality in its initial motion. Arguably, information regarding the reasons for MH's discharge would not become material, if it ever did, until MH's unsworn statement (if any) or evidence at the rehearing attributed Appellant's offense as a contributing factor. On the other hand, because the military judge did not cite such a rationale for denying the motion, we decline to uphold his ruling on that basis.

Instead, we resolve the issue by finding any error was harmless beyond a reasonable doubt. *See Santos*, 59 M.J. at 321. As an initial matter, we note that the significance of MH's MEB records to Appellant's court-martial, if it had any, existed in a very narrow context—to enable the Defense to respond in case MH stated, as anticipated, that Appellant's offense against her contributed to

the early end of her Air Force career. This anticipated significance was borne out at the sentence rehearing when MH said just that in her unsworn statement. Thus, in order to affect the proceedings, the MEB discharge records would need to have led to admissible evidence that rebutted factual assertions in MH's unsworn statement.

We find no indication that anything in these records would have led to admissible rebuttal evidence. At no point was the Defense able to identify any specific information that was likely to be in the records that would rebut MH's unsworn statement. Even assuming *arguendo* that the records included no suggestion by MH that Appellant's actions contributed to her discharge, that would not "rebut" her impression at the sentence rehearing that his actions had contributed to it.

Furthermore, we note that Appellant elected to be sentenced by the trial judge alone. The trial judge explained her reasoning for denying the Defense's motion to reconsider the motion judge's ruling. Rather than adopting the rationales in that ruling, as described above, the trial judge focused on the nature of MH's unsworn statement and highlighted the subjective nature of MH's "personal perception and opinion." The trial judge gave a clear signal that she found MH's impression of the impact of Appellant's actions on her was not a "fact" that was susceptible to being disproved by the contents of a MEB discharge package. *Cf. United States v. Fetrow*, 76 M.J. 181, 185 (C.A.A.F.) (stating the standard of review for a military judge's decision on the admission of evidence is an abuse of discretion) (citation omitted). Relatedly, the trial judge stated she would give MH's "personal perception and opinion" expressed through he unsworn statement "the weight that it deserves in this process." "Military judges are presumed to know the law and to follow it absent clear evidence to the contrary." *United States v. Rodriguez*, 60 M.J. 87, 90 (C.A.A.F. 2004) (citing *United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997)). Reviewing the proceedings as a whole, including the sentence adjudged, we are confident beyond a reasonable doubt that the nondisclosure of MH's MEB records did not affect the outcome. *See Coleman*, 72 M.J. at 187.

## B. Post-Trial Delay

Appellant's court-martial concluded on 6 March 2019. However, the convening authority did not take action until 9 July 2019. This 125-day period exceeded by five days the 120-day threshold for a presumptively unreasonable post-trial delay the United States Court of Appeals for the Armed Forces (CAAF) established in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Accordingly, we have considered the four factors the CAAF identified in *Moreno* to assess whether Appellant's due process right to timely post-trial and appellate review has been violated: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and

appeal; and (4) prejudice." *Id.* at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005); *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F. 2004) (per curiam)). "We review de novo claims that an appellant has been denied the due process right to a speedy post-trial review and appeal." *Id.* (citations omitted).

In *Moreno*, the CAAF identified three types of cognizable prejudice for purposes of an appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of the appellant's ability to present a defense at a rehearing. 63 M.J. at 138–39 (citations omitted). In this case, neither the adjudged or approved sentence included any term of confinement, so the post-trial delay cannot have caused oppressive incarceration. Furthermore, where the appellant does not prevail on the substantive grounds of his appeal, there is no oppressive incarceration. *Id.* at 139. Similarly, where Appellant's substantive appeal fails, his ability to present a defense at a rehearing is not impaired. *Id.* at 140. With regard to anxiety and concern, "the appropriate test for the military justice system is to require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id.* Appellant has made no claim or showing of such particularized anxiety or concern in this case, and we perceive none.

Where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). We conclude that under the circumstances, the five-day breach of the *Moreno* standard was not so egregious, and we do not find a violation of Appellant's due process rights.

Recognizing our authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we have also considered whether relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude no such relief is appropriate.

## III. Conclusion

The findings were previously affirmed. The approved sentence is correct in law and fact, and no error materially prejudicial to the substantial rights of

Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the sentence is **AFFIRMED**.[5]

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[5] We note several errors in the court-martial order with respect to the charges and specifications: Charge III, Specification 2 omits the word "her;" the "Finding" with respect to Charge III, Specification 3, should indicate "Article 120" vice "Article 120DB;" and Charge V, Specifications 1 and 2 omit the phrase "a married man." We direct the publication of a corrected court-martial order to remedy these errors.