# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
FLEMING, PENLAND, and SCHLACK
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Staff Sergeant JOEL A. CORRINARD**
**United States Army, Appellant**

ARMY 20220616

Headquarters, 1st Cavalry Division
Maureen A. Kohn, Military Judge
Lieutenant Colonel Shari F. Shugart, Staff Judge Advocate

For Appellant: Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Mitchell D. Herniak, JA; Captain Tumentugs D. Armstrong, JA (on brief); Colonel Philip M. Staten, JA; Captain Tumentugs D. Armstrong, JA (on reply brief).

For Appellee: Colonel Christopher B. Burgess, JA; Lieutenant Colonel Kalin P. Schlueter, JA; Major Justin L. Talley, JA (on brief).

28 March 2025

------------------------------------
OPINION OF THE COURT
------------------------------------

SCHLACK, Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of two specifications of sexual assault and one specification of abusive sexual contact, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. §§ 920 [UCMJ].[1] The military judge sentenced appellant to a dishonorable discharge and confinement for a total of 72 months.[2] The

---

[1] All three specifications were based on the version of Article 120, UCMJ, involving misconduct that occurred on or after 1 January 2019. Appellant was found not guilty of one specification of assault, in violation of Article 128, UCMJ.

[2] For Specification 1 of Charge I, to be confined for 72 months; for Specification 2 of Charge I, to be confined for 48 months; for Specification 3 of Charge I, to be confined for 12 months; all sentences to confinement to be served concurrently.

convening authority took no action on the findings and the sentence and disapproved appellant's request to defer and waive automatic forfeitures.

Appellant raises five issues on appeal. One requires correction.[3] An additional issue warrants discussion, but no relief.[4] We agree with appellant that the military judge erred in admitting evidence under Military Rule of Evidence [Mil. R. Evid.] 413, however, not for the same reason appellant asserted. Although we find the error did not materially prejudice appellant, it prompts a precedential decision regarding Mil. R. Evid. 413.

## BACKGROUND

### A. Circumstances of the Sexual Assault

Chief Petty Officer (CPO) ███ (hereinafter "the victim") met appellant after he moved into a room at the Navy Lodge on Joint Base Pearl Harbor-Hickam, Hawaii. The victim was living at the lodge because she was undergoing a separation from her husband and preparing for a permanent change of duty move. Appellant also had a room at the Navy Lodge, on the same floor and in the same wing as the victim. Upon meeting appellant at the beginning of June and learning he was new to the area, the victim offered to help appellant and exchanged cell phone numbers with him. Soon after, appellant and the victim casually interacted when they saw each other around the lodge.

On 7 June 2020, appellant texted the victim and then joined her on an ongoing walk with her two dogs. Upon returning to the lodge from the walk, appellant went into the victim's room because, according to the victim, "we weren't quite done talking." At this point, the victim's and appellant's accounts significantly diverge.

The victim testified that upon entering her room, they sat down on the opposite sides of one of the two beds in the room. Appellant offered to get cables and an iPad to set up a movie screen on the TV in the room; the victim declined the offer. The victim described starting to feel uncomfortable; appellant was using seductive body language towards her, and his questions and comments became more personal. She testified she could tell appellant was frustrated with her responses,

---

[3] The Entry of Judgment (EOJ) incorrectly states in Block 8 (Composition): "Military Judge Alone." The EOJ is hereby amended to reflect in Block 8 (Composition): "Enlisted Panel."

[4] We have given full and fair consideration to appellant's other assignments of error, to include matters submitted personally by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they lack merit and warrant neither additional discussion nor relief.

and he eventually stood up, got in front of her and pushed the victim down onto the bed with both his hands. Appellant then forcibly removed the victim's shorts and underwear, scratching her body. According to the victim, appellant then forced her legs open, stated he was "going to work [her] out," and started fingering her. She further testified appellant jerked up her top and sports bra to expose her breasts and then kissed and licked her breasts. When the victim dodged appellant's attempt to kiss her lips, appellant kissed her neck and then penetrated her vagina with his penis as she lay frozen. Next appellant flipped the victim over and continued to vaginally penetrate her with his penis. From this position, the victim was able to push herself up, and in the process, knock appellant backwards and away from her. Once the victim was able to separate from appellant, she yelled for him to leave her room, which he did. The victim then called 911. Law enforcement and emergency services responded. Soon after, the victim underwent a sexual assault forensic examination (SAFE).

Appellant testified at trial, claiming he was sexually assaulted by the victim. Appellant testified the victim ran into him earlier in the day and asked if he could install a system to allow her to watch movies on her lodge TV screen as opposed to her iPad. Appellant stated he needed to finish some in-processing tasks and he would let her know when he was done to come over and help her with the TV. Appellant testified after he finished the set-up, the victim made sexual advances towards him, pulling his shirt off and unzipping his pants. According to appellant, the victim wrapped her legs around him and pulled his penis through the opening of his shorts, rubbing his flaccid penis against her labia. Appellant testified the victim inserted her own fingers into her vagina and then put them into his mouth before rubbing them on her own nipples. Appellant described freezing during the event and then snapping out of this frozen state when the victim suddenly started yelling "How could you do this to me?" Once ordered by the victim to leave her room, appellant complied.

Testimony established that law enforcement officers responded to the victim's 911 call and appellant approached the officers twice after their arrival. On the first occasion, appellant attempted to discern why law enforcement was there. Then, on the second occasion, appellant stated he thought he was involved in what they were responding to and anything that happened was consensual, or words to that effect. The officers repeatedly told appellant not to talk. Two days later, appellant underwent his own SAFE and claimed he was the victim of a sexual assault by the victim, departing from his initial report of consensual activity to law enforcement.

In addition to the victim's testimony, the Government offered other testimony, pictures, and relevant reports corroborating her account and thus strengthening her credibility. Notably, the government offered: (1) the recording of victim's 911 call, (2) findings from both appellant's and the victim's SAFEs, (3) DNA evidence from the victim's cervical swabs, (4) the victim's ripped sports bra, (5) text messages

between appellant and the victim, and (6) testimony from law enforcement about appellant's incriminating statements and behavior at the scene. The government also offered testimony by Ms.███, pursuant to Mil. R. Evid. 413, as discussed in detail below.

*B. Mil. R. Evid. 413 Evidence*

In May 2022, during pretrial litigation, the government notified defense of the intent to introduce Mil. R. Evid. 413 evidence alleging appellant had previously violated Article 120, UCMJ, in mid-July 2014. After defense objection and a motion hearing, the military judge initially ruled to exclude the evidence but, *sua sponte*, reconsidered her decision before trial and determined the proffered evidence could be presented to the factfinder.

Based on this ruling, Ms.███ testified at trial, emotionally recounting an event involving appellant from mid-July 2014. Ms.███ testified while she was deployed to Afghanistan, appellant came to her living quarters. He wanted to come inside, but Ms.███ declined. Appellant forcefully stepped forward, grabbed Ms.███ by the waist, and pushed her back into her room. Despite Ms.███ repeatedly telling appellant to leave, appellant refused and instead began trying to kiss her on the lips. Ms.███ turned her head to avoid appellant kissing her on the mouth, stating to him "No, you've got to leave." Ms.███ testified appellant kissed her on other parts of her face, including her cheek. Ms.███ eventually forced appellant out of her room. Although Ms.███ testified to no other acts by appellant, she alleged a fear at the time that appellant was going to "rape" her.

The next day, Ms.███ found a handwritten note from appellant on her desk. As Ms.███ went to shred the note, appellant arrived and asked to speak to her privately. Ms.███ agreed to go with appellant because she did not want to discuss what happened in front of her work colleagues. Once they arrived in a server room, which was private, appellant apologized for what occurred the previous night. Ms. RR rejected appellant's apology and as she went to leave the server room, appellant kissed her on her lips without her consent.

Appellant now asserts the military judge abused her discretion by admitting Ms.███'s testimony under Mil. R. Evid. 413 because the military judge failed to conduct a sufficient Mil. R. Evid. 403 balancing test. We need not revisit the military judge's Mil. R. Evid. 403 analysis because we find Ms.███'s testimony was inadmissible under Mil. R. Evid. 413 as a matter of law.

## LAW AND DISCUSSION

### *A. Admissibility*

Military Rule of Evidence 413(a) provides "[i]n a court-martial proceeding for a sexual offense, the military judge may admit evidence that the accused committed any other sexual offense . . . [and it] may be considered on any matter to which it is relevant." *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013). "'This court has noted that inherent in [Mil. R. Evid.] 413 is a general presumption in favor of admission.'" *Id.* (quoting *United States v. Berry*, 61 M.J. 91, 94–95 (C.A.A.F. 2005)).

"There are three threshold requirements for admitting evidence of similar offenses under Mil. R. Evid. 413: (1) the accused must be charged with an offense of sexual assault; (2) the proffered evidence must be evidence of the accused's commission of another offense of sexual assault; and (3) the evidence must be relevant under Mil. R. Evid. 401 and 402." *Id.*; *see also United States v. Wright*, 53 M.J. 476, 482 (C.A.A.F. 2000). Although the standard of review for a military judge's decision to admit evidence is normally an abuse of discretion, we review *de novo* the underlying legal principle – whether the proffered evidence constitutes another sexual offense under Mil. R. Evid. 413. *See United States v. Yammine*, 69 M.J. 70, 73 (C.A.A.F. 2010).

Here the first requirement is clearly met. The second requirement, however, is not. The proffered evidence from Ms. RR did not constitute a "sexual offense," as defined by Mil. R. Evid. 413, when she testified at appellant's trial in 2022.

In her ruling, the military judge found the proffered evidence at the time of appellant's alleged act (mid-July 2014) constituted the sexual offense of "abusive sexual contact, a violation of Article 120, [UCMJ] (2012 ed.)." That finding was correct. In 2014, when appellant allegedly touched Ms. ▮▮▮ on her face with his lips without her consent to gratify his or her sexual desires, that type of contact was punishable under Article 120, UCMJ.[5]

Prior to appellant's trial, however, Congress amended and narrowed the definition of sexual contact to include only limited parts of the body. A sexual contact was defined as the "touching, or causing another person to touch, either directly or through the clothing, *the vulva, penis, scrotum, anus, groin, breast, inner thigh, or buttocks* of any person, with an intent to abuse, humiliate, harass, or

---

[5] In 2014, Article 120(g)(2)(B), UCMJ, defined sexual contact as "any touching, or causing another person to touch, either directly of through the clothing, any body part of any person, if done with an intent to arouse or gratify the sexual desire of any person." Article 120, UCMJ (2012 ed.).

degrade any person or to arouse or gratify the sexual desire of any person. Touching may be accomplished by any part of the body or an object." (emphasis added).[6] By the time of appellant's trial in 2022, his 2014 alleged act of kissing various parts of Ms. ██'s face no longer constituted a violation of Article 120, UCMJ.

Our superior court, in determining whether proffered evidence constituted a qualifying offense of sexual assault, has applied a strict reading of the punitive article in effect at the time of trial. *See United States v. Fetrow*, 76 M.J. 181, 186 (C.A.A.F. 2017) (holding "similar crimes must involve conduct listed in the version" of the evidentiary rule "in effect at the time of trial."). We acknowledge *Fetrow* involved application of Mil. R. Evid. 414 (similar crimes in child molestation cases), not Mil. R. Evid. 413 (similar crimes in sexual offense cases). However, our superior court's reasoning in *Fetrow* also controls the result here as those two rules of evidence contain the same threshold admissibility requirements. *See United States v. Dewrell*, 55 M.J. 131, 138 n.4 (C.A.A.F. 2001) ("As Rules 413 and 414 are essentially the same in substance, the analysis for proper admission of evidence under either should be the same.").

While a kiss on the cheek was once an abusive sexual contact under Article 120, UCMJ, it was no longer so at the time of appellant's court martial and, therefore, did not constitute a "sexual offense" under Mil. R. Evid. 413. The military judge erred as a matter of law by allowing Ms. RR's testimony under Mil. R. Evid. 413.

### B. Prejudice

Finding error in the admission of testimony regarding the prior incident involving Ms. ██, we must next test for prejudice. "The test for nonconstitutional evidentiary error is whether the error had a substantial influence on the findings'. . . . It is the government that bears the burden of demonstrating that the admission of erroneous evidence is harmless." *Fetrow*, 76 M.J. at 187 (citations omitted). "Error not amounting to a constitutional violation will be harmless if the factfinder was not influenced by it, or if the error had only a slight effect on the resolution of the issues of the case." *United States v. Muirhead*, 51 M.J. 94, 97 (C.A.A.F. 1999) (citation omitted). In determining the prejudice from an erroneous admission of evidence, the court weighs: "(1) the strength of the Government's case; (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *United States v. Kohlbek*, 78 M.J. 326, 334 (C.A.A.F. 2019) (citing *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999)).

The government's case was strong. While the factfinder was given two versions of events that happened in the victim's room, the government greatly

---

[6] *See* Article 120(g)(2), UCMJ (2019 ed.).

advanced the victim's credibility by offering significant corroborating evidence of her testimony. The medical evidence, DNA evidence, and text messages all corroborated the victim. It was compelling.

While the presence of injury is not indicative of consent or non-consent, the locations of the injuries the sexual and medical forensic examiner (SAMFE) identified on the victim corroborated her report of the assault. Additionally, the SAMFE testified she swabbed the victim's cervix based on the assault history the victim provided. The government offered the results from those swabs, which identified appellant as a contributor, discounting appellant's version of events that he, at most, may have slightly penetrated the victim's vagina with his penis and did not digitally penetrate her.

The text messages between the victim and appellant leading up to the assault indicated that appellant, not the victim, invited himself on the walk and made it more likely he instigated an ongoing conversation in the victim's room as related by her at trial. There is no indication in the messages that the victim was actively seeking companionship from appellant—in fact, the messages reveal the opposite— that appellant sought out companionship from the victim and she tried to avoid it.

Compelling too was the recorded 911 call minutes after the victim was sexually assaulted. The recording allowed the factfinder to hear the victim's hysterical plea for help—corroborating her version of the assault, not appellant's.

Further, appellant's behavior and statements to law enforcement at the scene strengthened the government's case—not because appellant admitted to wrongdoing—but because appellant initially told a tale (anything with the victim was consensual) that was plainly inconsistent with his later statements during his SAFE and at trial (the victim sexually assaulted him).

Conversely, the defense's case was weak. Although defense highlighted that no neighbors living nearby heard noises or shouting at the time of the alleged incident, attempting to negate the victim's testimony that she did not consent, that fact possessed low probative value in relation to the overall strength of the government's case. Ultimately, appellant's testimony provided several strained explanations for the government's compelling DNA evidence (appellant's DNA on the victim's cervix) and the other forensic medical evidence. *See United States v. Pleasant*, 71 M.J. 709, 714 (A.C.C.A. 2012) (recognizing an appellant's testimony "'may not only be disbelieved, but from the totality of the circumstances, including the manner in which [he] testif[ied], a contrary conclusion may be properly drawn.'").

We now turn to the materiality and the quality of the evidence erroneously admitted. Even though appellant's actions with Ms.███were different from the

victim, there were some similarities, and it possessed evidentiary value for the government as to appellant possessing a possible plan, intent, or absence of mistake regarding the victim.[7]

Nonetheless, when we weigh the probative value of the erroneously admitted evidence against the overall strength of the government's case, in contrast to the weakness of the defense case, the incident involving Ms. █████ was only slightly material, and its admission was harmless after the members had been provided with the victim's testimony, the medical evidence, the 911 phone call, law enforcement's testimony regarding appellant's on-scene statements, and appellant's strained testimony as to how his DNA was found on the victim's cervix.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Senior Judge FLEMING and Judge PENLAND concur.

FOR THE COURT:

// JAMES W. HERRING, JR.
Clerk of Court

---

[7] As the evidence was erroneously admitted under Mil. R. Evid. 413, we do not address admissibility under Mil. R. Evid. 404(b).