# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

————————————

## No. ACM 40752

————————————

**UNITED STATES**
*Appellee*

v.

**Brock T. ANDERSON**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 18 June 2026

————————————

*Military Judge*: Bradley J. Palmer (arraignment); Joshua D. Rosen (motions); Matthew P. Stoffel.

*Sentence*: Sentence adjudged 9 August 2024 by GCM convened at Altus Air Force Base, Oklahoma. Sentence entered by military judge on 15 October 2024: Dishonorable discharge, confinement for 8 years, and reduction to E-1.

*For Appellant*: Major Frederick J. Johnson, USAF; Captain Joyclin N. Webster, USAF; William E. Cassara, Esquire.

*For Appellee*: Major Vanessa Bairos, USAF; Major Regina Henenlotter, USAF; Major Kate Lee, USAF Major Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

Before GRUEN, KEARLEY, and MORGAN, *Appellate Military Judges*.

Judge KEARLEY delivered the opinion of the court, in which Senior Judge GRUEN and Judge MORGAN joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

KEARLEY, Judge:

Appellant was tried by a general court-martial at Altus Air Force Base (AFB), Oklahoma. Contrary to his pleas, a panel of officer and enlisted members found Appellant guilty of one specification of sexual assault of a child who had attained the age of 12 years, but had not attained the age of 16 years in violation of Article 120b, UCMJ, 10 U.S.C. 920b.[1,2] Appellant elected to be sentenced by a military judge who sentenced Appellant to a dishonorable discharge, eight years of confinement, and reduction to the grade of E-1. The convening authority waived automatic forfeitures for a period of six months for the benefit of Appellant's wife and children, with the waiver commencing on the date of judgment, and approved the remainder of the sentence.[3]

Appellant raised five issues on appeal which we have reworded and reordered: (1) whether Appellant's conviction for sexual assault of a child is legally and factually sufficient; (2) whether the military judge abused his discretion in admitting evidence pursuant to Mil. R. Evid 414; (3) whether Appellant's sentence was inappropriately severe; (4) whether 18 U.S.C. § 922 is constitutional as applied to Appellant; and (5) whether Appellant was denied his right to a unanimous verdict.[4] With respect to issues (4) and (5), we have carefully considered Appellant's contentions and find they do not require discussion or warrant relief. *See United States v. Johnson,* 86 M.J. 8, 14 (C.A.A.F. 2025) (holding this court is not authorized to modify the 18 U.S.C. § 922 firearm prohibition indication on the staff judge advocate indorsement to the entry of judgment); *United States v. Anderson*, 83 M.J. 291 (C.A.A.F. 2023) (holding appellant did

---

[1] The punitive article is from the *Manual for Courts-Martial, United States* (2019 ed.). Unless otherwise noted, all other references to the UCMJ, Rules for Courts-Martial, and Military Rules of Evidence (Mil. R. Evid.) are to the *Manual for Courts-Martial, United States* (2024 ed.).

[2] Appellant was also charged with three specifications of committing a lewd act upon a child who had attained the age of 12 years, but had not attained the age of 16, also in violation of Article 120b, UCMJ, 10 U.S.C. § 920b; however, as described *infra*, the military judge dismissed these specifications without prejudice.

[3] On 9 July 2024, the named victim in this case, RR, filed a petition of extraordinary relief in the form of a writ of mandamus in Appellant's case, requesting this court issue a writ vacating the trial judge's order to discover victim's privileged mental health records. On 22 July 2024, this court denied RR's petition. *See In re RR*, Misc. Dkt. No. 2024-08, 2024 CCA LEXIS 293 (A.F. Ct. Crim. App. 22 Jul. 2024) (unpub. op.); *see also In re RR*, Misc. Dkt. No. 2024-02, 2024 CCA LEXIS 286 (A.F. Ct. Crim. App. 7 May 2024) (order) (for additional procedural history).

[4] Appellant personally raised issues (4) and (5) pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982).

not have a right to a unanimous verdict at a court-martial); *United States v. Matias,* 25 M.J. 356, 361 (C.M.A. 1987). Finding no error that materially prejudiced a substantial right of Appellant, we affirm the findings and sentence.

## I. BACKGROUND

Appellant, a 21-year-old Airman, and his girlfriend, 17-year-old KA, were both from the same hometown in Georgia. Appellant joined the Air Force and shortly thereafter found out KA, was pregnant. Appellant moved to Altus, Oklahoma, for technical school and two of his friends from Georgia moved to the same location. They rented a house near the base, and eventually KA moved to Oklahoma to be near Appellant and have the baby. Shortly after the birth of their baby, Appellant and KA traveled from Oklahoma to Georgia to visit family.

The young family stayed at Appellant's parents' home where KA's 13-year-old stepsister, RR, visited them. RR decided to spend the night there. During the night, Appellant sent RR several messages from a social media account, stating, "If u want to talk or anything tho I got u." RR told Appellant she was bored and he offered to work in the guest bedroom where she was staying. He brought his work into the room and stayed with her. In the early hours of the following morning, Appellant sent RR a message from a new social media account stating,

> If u ever need to tell me something u for some reason don't want [KA] to see send it to this account or tell me in person. I hate that you feel like when you get anxious or depressed or even just bored your go to is chemicals. It doesn't make you a bad person. Your [sic] super sweet when u want to be. All I need is a "I'm bored" and I'll be there.

As Appellant and KA were getting ready to return to Oklahoma, KA invited RR to return with them for a few weeks. RR liked the idea and felt that a "change in environment" would be good for her and she could help KA with the baby. RR's mother agreed to the trip because she thought KA and RR wanted to spend some time together. RR's mother gave Appellant and RR money to help with the expenses and told Appellant to be careful and look out for her daughter.

Appellant informed his two other housemates that RR would live with them for a bit because she needed help and a better, safer environment than she had at home. They all shared a two-bedroom home that Appellant leased, and one

housemate already slept in the living room so the news of another roommate, especially after just adding the baby to the house, was a surprise to them.[5]

Nonetheless, Appellant, KA, the baby, and RR drove from Georgia to Oklahoma in Appellant's four-door crew cab pickup truck. RR sat in the back seat next to the baby's car seat. They stopped for the first night of the journey in Jackson, Mississippi, where they got a hotel room with one bed. When they walked into the room, KA saw the set up and said something to the effect that "obviously, she [(KA)] would sleep in the middle." According to RR, Appellant "made a frustration out of it," and said he was just going to sleep in the chair, if he could not sleep in the middle, so KA responded, "[W]hatever, sleep in the middle." So he did.

As RR fell asleep, she felt Appellant's hand on her waist and then he touched her breasts and buttocks over her clothes and then took her hand and put it on his penis. He leaned forward and whispered in her ear, "I need to get a nut off." RR got off the bed and stayed in the bathroom for several minutes before returning to bed and scooting closer to the edge of the bed. She eventually fell asleep. At that time, she did not tell her stepsister, KA, about the incident.

The next day the group drove to Dallas, Texas, for their next stop. They shopped at a mall. Appellant bought RR a necklace. Later that night they checked into a hotel. Their hotel again had only one bed, but it had a couch that was big enough for someone to sleep on. RR and KA decided they would sleep on the bed with the baby and Appellant would sleep on the couch. As they were getting ready for bed, RR realized she had left her laptop in Appellant's truck. While KA stayed with the baby, Appellant escorted RR to the parking lot. As RR retrieved her laptop from out of the back seat of the truck, Appellant grabbed her arm and asked her to get in the truck. He told her that if she "doesn't do this," he was going to ruin her relationship with KA and her niece, the baby. He then took her clothes off and penetrated her vagina with his penis. He did not use any protection and "finished" on her leg and on the seat and then wiped the seat with a baby wipe. RR put her clothes back on and went back to the hotel room and stayed in the bathroom for a while and cried as KA laid in the bed with the baby. RR did not tell KA about the incident. She eventually got into bed next to KA and fell asleep.

The next day the group arrived at their destination near Altus Air Force Base in Oklahoma. They eventually decided RR would share a bedroom with the baby and KA, and Appellant would share the other room. The two other

---

[5] Appellant was attached to a training squadron and occupied a dorm room as he was required to live on Altus AFB during this time.

4

housemates would not have a room. One would sleep in the living room, and one would sleep in the laundry room. That night Appellant went to the gym with his two housemates, DS and JI. While at the gym, Appellant brought up RR and said, "[I]f she wasn't 13, I would f[**]k her," and implied she was "kind of bad" as in the context of being "hot." JI felt a bit "weirded out" by Appellant's comments about RR's appearance, and assumed Appellant was just joking.

The day after the group's arrival in Oklahoma, RR used her sister's phone to access her social media account. She engaged in a text conversation with a friend who asked her if she was okay. RR replied, "[N]o not really." When the friend prodded, RR told her, "[I] did something really bad and if it ever gets out my whole family would be ruined." She went on to say, "bro i wanna tell yall so bad but if yall tell this person, literally my whole family would hate me." After her friend pledged she would not tell anyone, RR wrote, "i f[**ked] [Appellant]."

At trial, RR claimed that she wrote "i f[**ked] [Appellant]" because the social media application has a censor and she could not "say the hard R word on there," nor could she say the "whole F word" and instead, RR testified that she typed it in such a way that her friend would "understand what [she was] trying to say without it being unable to send because of the censor."

Shortly thereafter, KA opened the application on her phone and discovered RR's message. KA became angry and confused and confronted Appellant by slapping him. Appellant said nothing happened with RR. According to Appellant's roommates, the house became "explosive" with a lot of arguing, yelling and "fighting all over the place" between KA, Appellant, and RR. Appellant's roommate, DS, described KA as "distraught" and "enraged." DS testified that the arguments were "mainly [KA] and [RR] . . . arguing back and forth" for an hour or more while Appellant stood in the room, staying out of it and calming them down when he had a chance. KA was "crying and screaming" at RR, yelling profanity.

During the argument, Appellant's other roommate, JI, advised RR to get a "rape kit" done and recalled RR saying "she didn't need a rape kit."[6] JI testified that during one particular argument with KA and RR, he heard RR tell KA that she did not want KA to have Appellant for herself.

On the night of the argument, Appellant told his roommate, DS, that nothing had happened with RR, but that she put his hand on her breast and grabbed his penis while sleeping in a hotel room. Appellant claimed it was not

---

[6] RR testified that she did not remember a conversation with this roommate about a rape kit and that she did not get one done.

his fault since she did those things to him. DS testified that he told Appellant, "[Y]ou're a grown adult and she's a child. You have full control of her, the situation, like that's not cool."

RR was asked to leave Oklahoma. A few days after the argument, KA called RR's mother, SH, to tell her that RR was bored and wanted to come home. SH immediately suspected something had happened because KA and RR had wanted time together. RR left Oklahoma and returned to Georgia on an airplane. SH asked RR what happened, but RR told her mother she would never tell her what happened. However, RR began to engage in what she called "self-destructive" behavior and when her mother addressed her behavior, RR told her mother that Appellant had raped her. After hearing this, SH called Appellant and asked him directly if he had "raped her daughter." Appellant denied the accusation and handed the phone to KA. SH heard Appellant in the background saying "she wanted it, she was literally begging for it," and "it wasn't rape, it was just sex, she wanted it, she begged for it," and that he was going to call his mother, or words to that effect. After ending the call, RR's mother called the police department, which in turn opened an investigation into the allegation.

Sometime after RR returned to Georgia, KA told Appellant's roommate, JI, her understanding of what happened between Appellant and RR. She said Appellant had kissed RR in a hotel elevator and that RR grabbed his hand and placed it on her breast. JI testified for impeachment purposes only, that KA also said Appellant told her that he and RR "f[**]ked" in Appellant's truck and RR initiated all the contact.[7]

## II. DISCUSSION

### A. Legal and Factual Sufficiency

Appellant claims the "evidence is legally and factually insufficient to sustain the finding of guilty for sexual assault of a child." Specifically, Appellant claims that the Government failed to prove the elements of the offense because RR's account of the act was "illogical and impossible" and RR's narrative was "refuted" by the DNA evidence. Appellant further claims that certain documentary evidence exonerated Appellant, RR lacked credibility, the testimonial evidence did not establish Appellant's guilt, and the finding of guilty was against the weight of the evidence.

---

[7] KA denied making this statement to either roommate. The military judge admitted this testimony, over defense objection, for the purpose of impeaching KA's testimony.

### 1. Additional Background

#### a. DNA Evidence

The United States Air Force Office of Special Investigations (OSI) examined Appellant's truck in early August 2022, nearly three months after the alleged offense. Agents found stains on the back row of seats, mainly on the driver's side and in the center position. Evidence produced at trial included a laboratory report that confirmed the presence of Appellant's semen and a second DNA profile in the samples collected. The report confirmed the second DNA profile did not come from RR.

KA testified that she and Appellant had sex in the backseat of the truck ten or eleven times before May 2022. The expert witness from the laboratory testified that DNA can be degraded by hot temperatures and attempts to clean it. The expert could not provide a projected date when the semen was deposited in the truck.

#### b. Law Enforcement Interviews

RR was interviewed by a child forensic interviewer, MS, in May 2022 regarding the sexual assault. RR did not tell MS about the incidents in the Mississippi hotel room. Specifically, she did not tell her that Appellant grabbed her breast and buttocks or caused her to touch his penis. However, MS testified that she is trained not to ask leading questions and never asked RR if Appellant touched her in Mississippi.

RR was interviewed by an OSI agent, Special Agent KT, in September 2022. Special Agent KT asked RR if Appellant had ever done anything sexual with her before this and RR said, "[N]o." However, she did say Appellant touched her leg, which made her uncomfortable, so she got up to go to the bathroom. RR told Special Agent KT that on the night of the sexual assault, about seven or eight minutes had passed from the time RR and Appellant left the hotel room, went to the truck, and returned to the hotel room. She further stated that the actual sexual assault itself lasted 20 seconds from the time Appellant grabbed RR in the truck, until the time he wiped up his semen. Special Agent KT said that RR talked about suing Appellant for the sexual assault and implied that her mother told her to ask OSI that question. RR testified that she did not remember saying it took 20 seconds and she thought that it took longer than 20 seconds.

#### c. KA's Relationship with Appellant

KA married Appellant in November 2022. KA had a second baby with Appellant. At the time of trial, KA was still married to Appellant. She was financially dependent on him and receiving benefits such as health insurance for herself and her children.

**2. Law**

We review issues of legal sufficiency de novo. *United States v. Harrington*, 83 M.J. 408, 414 (C.A.A.F. 2023) (citing *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019)).

Our assessment of legal sufficiency is limited to the evidence produced at trial. *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citing *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993)). "The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (citation omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *King*, 78 M.J. at 221 (alteration in original) (citation omitted). "[T]he [G]overnment is free to meet its burden of proof with circumstantial evidence." *Id.* (citations omitted). "The term reasonable doubt, however, does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "This deferential standard impinges upon the factfinder's discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *United States v. Mendoza*, 85 M.J. 213, 217 (C.A.A.F. 2024) (internal quotation marks and citation omitted).

We review questions of factual sufficiency when an appellant asserts an assignment of error and shows a specific deficiency of proof. *United States v. Harvey*, 85 M.J. 127, 130 (C.A.A.F. 2024) (citing Article 66(d)(1)(B)(i), UCMJ, 10 U.S.C. § 866(d)(1)(B)(i), *Manual for Courts-Martial, United States* (2024 ed.) (*MCM*)). The current version of Article 66(d)(1)(B), UCMJ, states:

> (B) FACTUAL SUFFICIENCY REVIEW.
>
> (i) In an appeal of a finding of guilty under subsection (b), the Court may consider whether the finding is correct in fact upon a request of the accused if the accused makes a specific showing of a deficiency of proof.
>
> (ii) After an accused has made a showing, the Court may weigh the evidence and determine controverted questions of fact subject to—

(I) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and

(II) appropriate deference to findings of fact entered into the record by the military judge.

(iii) If, as a result of the review conducted under clause (ii), the Court is clearly convinced that the finding of guilty was against the weight of the evidence, the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding.

10 U.S.C. § 866(d)(1)(B) (*MCM*).

In order to convict Appellant of sexual assault of a child in violation of Article 120b, UCMJ, the Government was required to prove that (1) Appellant committed a sexual act upon RR; and (2) at the time of the sexual act RR had attained the age of 12 years but had not attained the age of 16 years. *See Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*), pt IV, ¶ 62.b.(2). For this offense, a "sexual act" is defined as the penetration, however slight, of the penis into the vulva or anus or mouth. *Id.* at ¶ 60.a.(g)(1).

### 3. Analysis

#### a. Legal Sufficiency

Appellant asserts the findings of guilty of the Specification and its Charge are legally insufficient (1) because RR's account of the act was "illogical and impossible," and (2) because the DNA evidence refuted her narrative.

A rational trier of fact reasonably could have found the Government proved each element beyond a reasonable doubt. While there were inconsistencies in RR's testimony at trial and her initial report to investigators about the length of time the sexual assault lasted, a trier of fact could reasonably believe RR's in-court testimony that a sexual assault took place regardless of inconsistencies in how long it took. A special agent testified that they asked RR about several timelines, to include the length of the time it took her to leave the room, go to the truck and return, as well as the more pinpointed timing of the sexual assault. In doing so, they used phrases like, "from the time he grabbed you how long" and "then from the time he cleaned himself up." A trier of fact could reasonably view the discrepancies in RR's timeline as the product of an imperfect estimate of elapsed time by a 13-year-old child, rather than as evidence that her account was generally unreliable.

Additionally, a reasonable trier of fact could have found RR's account of the physical position of her body in the truck credible, especially given KA's testimony about having sex with the Appellant in the same back seat of the truck, indicating that Appellant would be familiar with how to position someone to

9

have sex with them. Finally, while RR's DNA was not found in the backseat of the truck, a reasonable factfinder could determine the assault still happened especially since the expert from United States Army Criminal Investigation Laboratory (USACIL) testified that DNA can degrade from high temperatures and cleaning. The DNA was collected three summer months after the incident.[8] Furthermore, Appellant's DNA and semen were found in the back seat of the truck, consistent with RR's testimony that Appellant ejaculated on the back seat.

We conclude that, viewing the evidence in the light most favorable to the Prosecution and drawing all reasonable inferences, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Robinson*, 77 M.J. at 297–98 (citation omitted).

### b. Factual Sufficiency

As to factual sufficiency, we examine this issue as we find Appellant has shown a specific deficiency in proof. *See* Article 66 (d)(1)(B)(i), UCMJ. Appellant points to the lack of RR's DNA in the truck and claims RR's account of the incident was "full of lies, convenient memory lapses, and inconsistencies," and was "illogical."[9] While the evidence contains some inconsistencies relating to the length of time of the assault and what RR remembered, these inconsistencies were minor and do not clearly convince us the findings of guilty were against the weight of the evidence.

Appellant did not keep reasonable boundaries with RR. Examples such as Appellant giving RR a private way to contact him through a new social media account, renting hotel rooms with one bed and desiring to sleep in the middle, and making sexual comments to his roommates about RR's body demonstrate a consistent pattern of poor or absent personal boundaries for a 21-year-old man to have with a 13-year-old-child and are evidence of Appellant's intent and desire to engage in sexual activity with RR, especially in light of other evidence presented during trial.

The record indicates KA believed it was possible that Appellant committed a sexual act with RR. Most telling is the "explosive" argument between KA and RR regarding RR's text message to her friend about the sex that occurred

---

[8] The sexual assault took place in May 2022 and the DNA was collected in August 2022.

[9] Additionally, Appellant argues that the testimony of several other government witnesses describes years-long family drama that calls into question the reliability of their testimony. We find those arguments unpersuasive and conclude they do not alter our analysis.

between her and Appellant. Appellant's roommate, DS, said the arguments were "mainly [KA] and [RR]. . . . arguing back and forth" for an hour or more while Appellant stood in the room, staying out of it and calming it down when he had a chance. KA was "crying and screaming" at RR, yelling profanity. The intensity of KA's reaction to finding the text, and her anger directed at RR, itself is a piece of circumstantial evidence that she believed it was possible that Appellant committed a sexual act with RR.

Appellant's own statements provided strong evidence that a sexual act took place between RR and him. While KA and RR were arguing, DS talked to Appellant twice about what happened between him and RR. Appellant eventually told DS that while they were in bed sleeping RR had grabbed his penis and moved his hand to her breast. He claimed "he was not in control so it shouldn't be something he gets in trouble for," and "that he didn't put her hand there, she did it herself, so, it's not on him." Yet, when this happened in this manner, allegedly, Appellant did nothing—he didn't remove her hand or leave the bed. This evidence corroborates RR's testimony to similar conduct in the hotel room, regardless of the claims by Appellant as to who initiated the sexual contact. This conduct in the hotel is strong evidence of Appellant's intent and desire to engage in sexual acts with RR, making it more likely that he had sex with her in the truck.

Furthermore, Appellant's response when RR's mother confronted him over the phone is evidence that the charged sexual acts took place, even if Appellant deflected responsibility for it.[10] Appellant was heard in the background claiming "it wasn't rape" because RR initiated it and "begged for it," and it "was only sex."[11] In stating this, Appellant's rationale for why "it wasn't rape," is strong evidence that the sexual act in the truck happened as RR testified and further corroborates RR's testimony that Appellant penetrated her with his penis, regardless of Appellant's claims as to who initiated it.

Finally, and less significant to our analysis, Appellant knew how to position someone to have sex with her in the backseat of his truck. While Appellant argues that RR's version of events is unbelievable, given the time it would take to get into position to make sex possible, KA testified that she and Appellant

---

[10] Even though KA testified she did not recall Appellant saying this to RR's mother, we consider that testimony in light of KA's interest in the outcome of the trial, including her reliance on Appellant for financial and medical support of her and their two children.

[11] Appellant's comments about RR initiating sexual contact fail to recognize that given RR's young age of 13 years old, sexual contact between the two is an offense under the law attributable to him. However, Appellant recognizes this by telling his roommates that "if she wasn't 13 [years old], he would f[**]k her."

had sex in the back of Appellant's truck on multiple occasions. According to KA, they used the backseat because there was more privacy than if they had used the front seat. Given Appellant and KA's experience of having sex in the backseat of the truck, Appellant's argument as to the "illogical" nature of her testimony is weak.

In conclusion, while RR's DNA was not found in Appellant's truck, and there were some discrepancies in her initial report and testimony at trial, there was plenty of other evidence corroborating RR's testimony that Appellant committed a sexual act on RR. Therefore, upon a review of the record, we are not clearly convinced the findings of guilty were against the weight of the evidence.

## B. Mil. R. Evid. 414 Evidence

Appellant's next assignment of error involves evidence of Appellant's conduct with RR in the Mississippi hotel room when they all shared a bed. Appellant claims the military judge abused his discretion in admitting evidence of other uncharged alleged acts of child molestation pursuant to Mil. R. Evid. 414 and that the evidence had a substantial influence on the verdict in context of Appellant's entire case. Appellant asks that this court set aside and dismiss the finding of guilty and the sentence and restore all "rights, property, and privileges" to Appellant. We decline to do so.

### 1. Additional Background

Appellant's trial was originally scheduled to begin on 8 July 2024. In addition to being charged for the crime for which he was convicted (sexual assault of RR), Appellant was originally charged with three specifications of committing a lewd act upon RR. These specifications included alleged acts of Appellant touching the breast of RR with his hand, touching RR's buttocks with his hand, and causing RR to touch his penis with her hand, all with an intent to gratify his sexual desire. The day before trial, while conducting a pretrial interview of RR on 7 July 2024, the Government learned that the alleged misconduct reflected in Specifications 1–3 may have occurred at a different location. The charge sheet listed the location of the lewd acts as being in the state of Texas. Special Trial Counsel learned that the location of the alleged lewd acts was the hotel in Jackson, Mississippi, rather than in the state of Texas as charged. The Government wanted to amend the charge sheet, claiming the modifications were minor, and moved to amend the charge sheet to correct the location of the acts. The military judge denied the Government's motion to consider the modifications as minor and found changing the location to Jackson, Mississippi,

constituted a major change.[12] As a result, the military judge dismissed Specifications 1, 2, and 3 of the Charge without prejudice and granted a continuance until the week of 5 August 2024, giving trial counsel and trial defense counsel nearly four weeks until the court would reconvene.

Later that same day, on 9 July 2024, the Government notified trial defense counsel and the military judge of its intent to offer evidence of the lewd acts during trial. However, this time the Government was offering the evidence pursuant to Mil. R. Evid. 404(b) and Mil. R. Evid. 41[4].[13] Specifically, the Government noticed the following evidence:

> Evidence that [Appellant] touched the breast of [RR] in a hotel bed while laying between the victim and [KA] on or about 9 May 2022 at or near Jackson, Mississippi.

> Evidence that [Appellant] touched the buttocks of [RR] in a hotel bed while laying between the victim and [KA] on or about 9 May 2022 at or near Jackson, Mississippi.

> Evidence that [Appellant] caused [RR] to touch his penis in a hotel bed while laying between the victim and [KA] on or about 9 May 2022 at or near Jackson, Mississippi.[14]

The Government claimed they would offer the evidence for several reasons: (1) to show Appellant's intent to enter into a sexual relationship with victim, (2) as motive to engage in sexual contact with the victim, and (3) to show a plan to test and break down RR's boundaries and escalate sexual conduct from touch to penetration. Trial defense counsel moved to exclude the proffered evidence and contested it under Mil. R. Evid. 414, claiming that the Government provided late notice of the proffered evidence without good cause under Mil. R. Evid. 414 and the notice was in violation of the timeline set out in the military

---

[12] Rule for Courts-Martial 603(e) allows a military judge to, upon motion, permit minor changes in the charges and specifications at any time after arraignment and before findings are announced if no substantial right of the accused is prejudiced.

[13] The Government's notice references Mil. R. Evid. 413, but the military judge recognized and trial defense counsel conceded that Mil. R. Evid. 414 was the applicable rule, curing any issue from this discrepancy.

[14] The Government also noticed its intent to introduce evidence pursuant to Mil. R. Evid. 404(b) that Appellant touched the breast and buttocks of RR on or about 10 May 2022 at or near Dallas, TX. However, the military judge "concur[red] with the parties that the actions are *res gestae* of the charged offense" and as such did not rule on that evidence.

judge's scheduling order.[15] On 9 July 2024, the trial counsel opposed trial defense counsel's motion to exclude the evidence.

The military judge denied trial defense counsel's motion to exclude the evidence under Mil. R. Evid. 404(b) and 414. The military judge's ruling included a detailed analysis of Mil. R. Evid. 414 and 404(b), and he conducted a Mil. R. Evid. 403 balancing test. The military judge found the three threshold requirements established by Mil. R. Evid. 414 and *United States v. Yammine,* 69 M.J. 70 (C.A.A.F. 2010), had been met: (1) Appellant is charged with an offense of child molestation as the remaining specification and charge is a violation of Article 120b, UCMJ, (sexual assault of a child); (2) the testimony and evidence during the motions hearing constituted sufficient proof that Appellant committed another qualifying offense of child molestation; and (3) the proffered evidence is relevant under Mil. R. Evid. 401 and 402, as it had the tendency to make it more probable Appellant would commit a sexual assault against RR since the proffered evidence and allegations in both cases involve the same female victim, close to the same time and setting (same road trip, at night time, at different hotels). Further, they had a common factor in Appellant's predisposition and motive to engage in sexual acts with RR during their road trip, when stopping for the night at two different hotels.

The military judge indicated that the facts of the Mil. R. Evid. 414 child molestation allegations are the type of evidence contemplated by this Rule. The military judge also conducted a detailed Mil. R. Evid. 403 balancing test and found that the probative value of the evidence was not substantially outweighed by the dangers of unfair prejudice, confusion of the issues, potential to mislead members, nor considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In regard to notice, the military judge found good cause existed to excuse the late notice of the evidence because it was "noticed shortly after the Government discovered it" and that trial defense counsel had "sufficient time to prepare" due to the bifurcated motions hearing from 8 July 2024 and 5 August 2024.

Appellant argues that the threshold requirements to admit the evidence were not met. Specifically, Appellant claims RR was inconsistent in her statements regarding the hotel incident in Mississippi. Appellant highlights that RR did "not tell the forensic interviewer about the city or state that the

---

[15] Mil. R. Evid. 414(b) requires disclosure to the accused of evidence of other uncharged acts of child molestation at least five days before entry of pleas, or later if the military judge allows for good cause. The military judge's scheduling order required all notices to be filed by 28 June 2024.

uncharged acts occurred," arguing that she had ample opportunity to fabricate new allegations and/or be influenced by the testimony and evidence in the motions hearing held nearly 14 months later. Appellant also argues that the testimony of Appellant's roommate, DS, contradicted RR's testimony, highlighting that Appellant told him that "RR caused him to touch her breast with his hand and RR touched Appellant's genitals in a hotel bed in Texas." Appellant also argues that these acts were a continuous course of conduct in Dallas and not evidence that Appellant committed another qualifying offense of child molestation and that good cause for late notice to the Defense did not exist.

**2. Law**

We review a military judge's decision to admit evidence over objection for abuse of discretion. *United States v. Hyppolite*, 79 M.J. 161, 164 (C.A.A.F. 2019) (citing *United States v. Phillips*, 52 M.J. 268, 272 (C.A.A.F. 2000)). A military judge abuses his or her discretion when the military judge's "findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *United States v. Miller*, 66 M.J. 306, 307 (C.A.A.F. 2008). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable, or clearly erroneous.'" *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010) (quoting *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010)).

In a court-martial proceeding in which an accused is charged with an act of child molestation, the military judge may admit evidence that the accused committed any other offense of child molestation and that evidence may be considered on any matter to which it is relevant. Mil. R. Evid. 414(a).

Admissibility under Mil. R. Evid. 414 requires the following findings by the military judge:

> (1) whether the accused is charged with an act of child molestation as defined by 414[(d)];
>
> (2) whether the proffered evidence is evidence of his commission of another offense of child molestation as defined by the rule; and
>
> (3) whether the evidence is relevant under M.R.E. 401 and M.R.E. 402.

*United States v. Fetrow*, 76 M.J. 181, 185 (C.A.A.F. 2017) (citing *Yammine*, 69 M.J. 70, 73–74 (C.A.A.F. 2010)).

Child molestation means an offense punishable under the UCMJ that involves any conduct "prohibited by Article 120b[, UCMJ]." Mil. R. Evid. 414(d)(2)(A).

"The question of whether the admitted testimony constitutes evidence that the accused committed another offense of child molestation under [Mil. R. Evid.] 414 is one of law" which we review de novo. *Id.* (citing *Yammine*, 69 M.J. at 73).

Evidence is relevant if it has any tendency to make a fact of consequence more or less probable. Mil. R. Evid. 401. Relevant evidence is generally admissible absent a rule requiring otherwise. Mil. R. Evid. 402. Even when evidence is relevant, a military judge may prohibit its admission when the evidence's probative value is substantially outweighed by such considerations as unfair prejudice, confusion of the issues, or waste of time. Mil. R. Evid. 403.

Military judges have "wide discretion" in applying the Mil. R. Evid. 403 balancing test, which we will not overturn absent "clear abuse of discretion" when they explain their analysis on the record. *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000).

If the prosecution intends to offer evidence that the accused committed any other offense of child molestation pursuant to Mil. R. Evid. 414(a), they must disclose it to the accused, including witnesses' statements or a summary of expected testimony, at least five days prior to entry of pleas or at a later time that the military judge allows for good cause. Mil. R. Evid. 414(b).

### 3. Analysis

We start our analysis by reviewing the first and second threshold questions de novo because they are questions of law. The first threshold question is met as Appellant was charged with an act of child molestation as defined by Mil. R. Evid. 414(a) because the remaining charge and specification is a violation of Article 120b, UCMJ (2019 *MCM)*, sexual assault of a child, alleging a penetrative offense of a person who is not yet 16 years of age. The second threshold question is met because the admitted evidence that Appellant touched the breast and buttocks of RR and caused RR to touch his penis at the hotel in Mississippi legally constitutes evidence that the accused committed an offense of child molestation as defined by Mil. R. Evid. 414(d). Mil. R. Evid. 414(d)(2)(A). The admitted evidence includes conduct prohibited by Article 120, UCMJ, and committed with a child. *See Fetrow*, 76 M.J. at 185.

We turn the remainder of our analysis to the third threshold question, which we review for abuse of discretion. The military judge found that the evidence of the child molestation in the Mississippi hotel room is relevant under Mil. R. Evid. 401 and 402 as he found it tends to make it more probable that

Appellant would commit sexual assault against RR. The military judge provided a detailed written ruling where he found the evidence was relevant in part because it involved the same female victim, close in time and setting to the charged offense (same road trip, occurring during the night at different hotel stops). The military judge found a common fact weighing in favor of relevance is the Appellant's predisposition and motive to engage in sexual acts with RR during their road trip, when they stopped for the night at hotels. This decision is reasonable, especially since Appellant appears to have tested the response of RR in the hotel room the first night, and when she did not tell her sister what happened, he took the abuse further the next night.

While Appellant argues that inconsistencies in the testimony provided at the motions hearing should weigh against admission, the military judge found the "strength of proof of the prior act" which "came from the victim herself and statements of the accused" favored the admissibility of the evidence. Upon reviewing the record, the military judge's decision fell within the range of reasonable choices.

As to notice, the military judge thoroughly addressed the Government's late notice of the proffered evidence and found good cause for it, considering it was noticed shortly after the Government discovered it during trial counsel's 7 July 2024 pretrial interview with RR, and the arraignment was bifurcated and trial was not until 5 August 2024—nearly four weeks after notice was provided. The military judge pointed out that the trial date was chosen by the Defense, as the continuance was jointly requested and as such the Defense had "sufficient time to prepare."

Recognizing that the military judge has a range of choices, we find his conclusions of law with regard to the Mil. R. Evid. 414 evidence and the timing of the Government's notice of that evidence were within that acceptable range and not "arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *White*, 69 M.J. at 239. We conclude the trial judge did not abuse his discretion in his Mil. R. Evid. 414 ruling. We therefore do not reach the issue of prejudice.

## C. Sentence Appropriateness

### 1. Additional Background

During the sentencing phase of the trial, trial counsel argued for Appellant to receive 12 years confinement. Trial counsel argued that prior to the court-martial, Appellant "didn't seem to take his conduct seriously" and referred to Appellant's comments to his roommates about the physical features of RR, a 13-year-old child. Trial counsel pointed out that "whether joking or not, [the comments were] highly inappropriate but [Appellant] didn't see it that way." Trial counsel also pointed to testimony that shortly after the event, Appellant did not think there was anything wrong with what he did to RR and that it

was "just sex." Trial counsel also argued that 12 years' confinement is on the "low end" of the recommended sentence for this crime.[16]

Trial defense counsel acknowledged that some punishment was appropriate and urged the military judge to sentence Appellant to no more than two years of confinement.

The military judge sentenced Appellant, *inter alia*, to eight years of confinement.

### 2. Law

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2016) (footnote omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(d)(1), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citing *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009)). While we have great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

The maximum confinement for sexual assault of a child is 30 years. The mandatory minimum punishment is dismissal or a dishonorable discharge. Article 120b, UCMJ; 2019 *MCM*, pt. IV ¶ 62.d.(2).

### 3. Analysis

Appellant contends his sentence to eight years of confinement is unduly harsh and inappropriately severe "when considering this particular Appellant, the nature and seriousness of the offense, his service record, and all matters contained in the record." Appellant cites his unsworn statement where he apologized to RR, as well as his family, friends, and wife (KA). Appellant's unsworn statement highlighted his commitment to the future and making the most of his life for the sake of KA and their children. Appellant points out that he had a "short but unblemished career in the Air Force." While eight years is a

---

[16] Trial counsel pointed out the new Manual for Courts-Martial provides sentencing guidelines, and while not binding on this case, trial counsel argued they are "helpful in narrowing down what it is appropriate" for this case and provides a window of 10 to 20 years.

significant sentence, this court is not authorized to engage in clemency. *Nerad*, 69 M.J. at 146.

We are not persuaded Appellant's sentence is inappropriately severe. Appellant committed a serious sexual offense by sexually assaulting the 13-year-old sister of his then girlfriend while she was entrusted to his care. He used RR's interest in spending time with her sister and baby niece to keep her from reporting it. When confronted with his actions, he claimed RR initiated it and he was not responsible, despite knowing that it was wrong for him to commit sexual acts with a 13-year-old, as evidenced by his comments to his roommate that "if she wasn't 13 [years old], he would f[**]k her." The miliary judge sentenced him to just over a quarter of the maximum sentence of 30 years.

We have considered the nature and seriousness of the offense and have given individualized consideration to Appellant's history and characteristics, including his record of service, and all other matters contained in the record. After careful consideration of all matters contained in the record of trial, we conclude Appellant's sentence is not inappropriately severe.

## III. CONCLUSION

The findings are correct in law and fact. Article 66(d), UCMJ (*MCM*). In addition, the sentence is correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d) (2019 *MCM*). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court